The COURIER–JOURNAL AND LOUISVILLE TIMES COMPANY and Keith L. Runyon, Appellants,

v.

UNIVERSITY OF LOUISVILLE BOARD OF TRUSTEES, University of Louisville Foundation, Inc., Mr. Woodford R. Porter, Mrs. Mason C. Rudd, Mr. Samuel H. Klein, Mr. Mark Neff, Mr. Owen C. Hammond, Mr. Ben J. Talbott, Jr., Dr. Mary K. Tachau, Dr. Rudolph Keeling, Mr. A. Wallace Grafton, Jr., Mr. W. Scott Miller, Jr., Dr. Carrol Witten, Dr. J. Herman Mahaffey, Appellees.

Court of Appeals of Kentucky.

August 17, 1979.

Rehearing Denied April 4, 1980.

Edgar A. Zingman, Jon L. Fleischaker, Ann Oldfather, Wyatt, Grafton & Sloss, Louisville, for appellants.

Robert F. Matthews, John H. Stites, III, Dorothy M. Pitt, Greenbaum, Doll & McDonald, David L. Baker, Louisville, for appellees.

Before GANT, HAYES and WILHOIT, JJ.

GANT, Judge.

This action was brought pursuant to KRS 61.805–61.850, the so-called "open meetings law." The appellants seek relief in four basic categories. They ask the Court to declare (1) that the University of Louisville Foundation, Inc. is a public agency as defined in KRS 61.805(2); (2) that the meetings of the Foundation on April 18, 1977 and July 18, 1977 were illegally closed; (3) that the meeting of the University of Louisville Board of Trustees on July 18, 1977 was illegally closed during a portion thereof and that thereby their actions were void; and, (4) they seek to enjoin both the Foundation and the Trustees from conducting or participating in further meetings in violation of the applicable statutes.

To examine the problems presented, we must first look at the University of Louisville Foundation, Inc. The Foundation came into being during that period when the University of Louisville joined the state system of higher education, ceasing its previous existence as a private and municipal institution. The purpose of forming this corporation, which was created as a private nonprofit corporation under Chapter 273 of the Kentucky Revised Statutes, was to create an entity to which real and personal property, trusts and other fiduciary creations, etc., held by the University as trustee and otherwise, could be transferred to insure the application of said property to U of L and to receive future properties, grants and other funds. The Foundation was created by the Board of Trustees of the University of Louisville, which is admittedly a public agency under the provisions of KRS Chapter 61. Appellees herein argue that because the Board of Trustees of the University of Louisville was not a public agency at the time the Foundation was created, it would not fall under the definition contained in KRS 61.805(2). We deem that to be of no consequence and must look to that definition as it now applies. Since the Board of Trustees is admittedly a public agency, if the Foundation now qualifies under that section of the act, it would be a public agency.

KRS 61.805(2) reads as follows:

61.805. Definitions.—As used in KRS 61.805 to 61.850 unless the context otherwise requires:

(1) "Meeting" means all gatherings of every kind, regardless of where the meeting is held, and whether regular or special and informational or casual gatherings held in anticipation of or in conjunction with a regular or special meeting;

(2) "Public agency" means any state legislative, executive, administrative or advisory board, commission, committee, policy making board of an institution of education or other state agency which is created by or pursuant to statute or executive order, (other than judicial or quasi-judicial bodies); any county, city, school district, special purpose district boards, public commissions, councils, offices or other municipal corporation or political subdivision of the state; any committee, ad hoc committee, subcommittee, subagency or advisory body of a public agency which is created by or pursuant to statute, executive order, local ordinance or resolution or other legislative act, including but not limited to planning commissions, library or park boards and other boards, commissions and agencies;

(3) "Action taken" means a collective decision, a commitment or promise to make a positive or negative decision, or an actual vote by a majority of the members of the governmental body.

We then examine the University of Louisville Foundation, Inc. in light of this statute. Although the Foundation may well be an advisory board or policy-making board of an institution of education, it was not created by or pursuant to statute or executive order but, instead, was created by the Board of Trustees. In the section above quoted, in order to constitute a subagency or subcommittee or advisory body of a public agency it must be created, according to the statute, by "statute, executive order, local ordinance or resolution or other legis-

lative act . . . ." Appellants argue that the Foundation was created by resolution of the Board of Trustees but the word "resolution" as used in the statute does not mean such a resolution. It is used in conjunction with the word "ordinance" and the phrase "other legislative act." "Resolution" as used in this statute refers to an action of a municipal legislative body such as the resolutions referred to in KRS 83.-090(3) Cities of the First Class; KRS 84.-100(2), (3) Cities of the Second Class; KRS 85.110(3) Cities of the Third Class and Others. It is not intended to include resolutions of another public agency but refers to local ordinances and resolutions used interchangeably.

We see nothing in the creation of the Foundation which qualifies it as a public agency under KRS 61.805(2).

■ However, the governing board of directors of the Foundation, since its inception and continuing down to the present time, includes the entire membership of the Board of Trustees of the University of Louisville. At the meetings herein complained of, the April 18 meeting of the Foundation was attended by eleven of the twelve members of the Board of Trustees of U of L; the July 18 meeting was attended by eight of the twelve members of the Board of Trustees. Both of these numbers constituted a quorum of the members of the Board of Trustees of the University of Louisville, admittedly a public agency. When we examine KRS 61.810 we find that this statute states as follows:

> All meetings of a quorum of the members of any public agency at which any public business is discussed . . . are declared to be public meetings, open to the public at all times, except for the following [exceptions]: (Exceptions listed).

Relating back to the definition of the word "meetings," we find that KRS 61.-805(1) contains the definition:

> "Meeting" means all gatherings of every kind, regardless of where the meeting is held, and whether regular or special and information or casual gatherings held in anticipation of or in conjunction with a regular or special meeting;

We find particular significance in examining, for legislative intent, the reports of the Acts of the General Assembly of 1974, at which session the "Open Meetings Law" was enacted. KRS 61.810 originally contained the language "All regular or special called meetings of a quorum of the members of any public agency . . ." but the words "regular or special called" were deleted from the Bill before passage, thus referring back to the definition of "meeting" contained in KRS 61.805(1). We further note that in the preamble to HB 100 it was stated ". . . it is the policy of the Commonwealth that the formation of public policy is public business and may not be conducted in secret . . . ."

Thus we find that the members of the Board of Trustees of U of L attended the meeting of a Foundation which they created, the number of the members in attendance clearly constituting a quorum. Their membership in another corporation does not remove them from public scrutiny if, in fact, the gathering was "held in anticipation of or in conjunction with a regular or special meeting" of the public agency, or a meeting at which "any public business is discussed."

We would first emphasize that unquestionably this was a meeting of a *quorum* of the members of a public agency. We would contrast the composition of the Board of Directors of the University of Louisville Foundation, Inc. with that of Indiana University Foundation, one of the more successful foundations of any public institution of higher learning. At the Indiana University Foundation, pursuant to the bylaws of that Foundation, Article 2, Section 2.5, we find the following:

> Three Directors . . . shall be members of The Board of Trustees of Indiana University. One of these Directors shall at all times be the person who is president of The Indiana University Board of Trustees, and the remaining two shall be elected from a list of Trustees submitted for such purpose by the Board of Trustees.

The composition of the Board of Directors of Indiana University Foundation is three members of the Board of Trustees of the 29 total members of the Board—approximately 10%. A quorum of the Board of Trustees of Indiana University does not serve in both capacities.

In examining the minutes of the April 18 meeting to determine whether this meeting of the Foundation Board, attended by eleven members of the Board of Trustees, was held in anticipation of a regular or special meeting of the public agency, we find the statement made by the president of U of L: "I hope we can now devote more attention [in this meeting of the Foundation] to planning what we will do tomorrow [in the meeting of the Board of Trustees]." We can think of no statement which better summarizes the true purpose of a large portion of the April 18 meeting. Examination of those minutes clearly depicts the trustees discussing, in closed session, what will be done the following day by the Board of Trustees in open session.

In the July 18 meeting, we find a subsequent statement by the president of U of L: "Now before we get off this, and this is extremely important and far more important than the Foundation agenda. . . ." As a matter of fact, in both meetings the Foundation agenda seemed considerably less important than that of the Board of Trustees. Where the common members of these two Boards, wearing alternate hats of the same hue, indulge in this type of discussion, it seems to this Court that they are violating the purpose of the open meetings law stating that the formation of public policy is public business and may not be conducted in secret.

Those minutes were further examined to determine whether, pursuant to KRS 61.-810, this quorum of the members of a public agency discussed any public business. Without being overly specific, we find that at the April 18 meeting the president furnished a report on the last meeting of the Council of Public Higher Education; he discussed the Community College System, the Ph.D. program of the University of Louis-ville, mission statements issued by the eight state universities, capital construction by the University of Louisville—not by the Foundation; the Psychology Department, rivalry between the state institutions over state money, etc. Another example was a statement by one of the trustees to his fellow trustees, during the Foundation meeting, that the Board of Trustees speak out to the Courier-Journal at the open meeting of the trustees concerning the regional university concept, which had been discussed at length.

At the July 18 meeting, again a report on the meeting of the Council on Public Higher Education was given; the annual operating budget of the University of Louisville was discussed; the role of regional universities of the Commonwealth was discussed; state funding, the institutional benchmark concept, a performing arts center, cancer center, neuropsychiatric institute, etc. were all discussed in considerable detail. Of the minutes of both meetings, some 15 to 17 pages of detailed minutes were consumed by discussions of matters relating solely to the University of Louisville and not to the Foundation. Frankly, much of it was consumed in discussions of political pressure by which the state budget could be increased to the University of Louisville, none of which would pass to that institution through the hands of the Foundation.

Appellants complain that the lower court made no definition of the phrase "public business" as used in KRS 61.810. We will attempt no precise definition herein but we intend to be specific when we say that *public education is public business* and, where public education is discussed by a quorum of the members of a public agency at meetings defined by statute, such meetings are clearly covered by the open meetings law. A comprehensive definition of public business was contained in the case of *State ex. rel. Porterie v. Housing Authority of New Orleans*, 190 La. 710, 182 So. 725 (1938), the language of which was quoted with approval in the case of *Spahn v. Stewart*, 268 Ky. 97, 103 S.W.2d 651, 655 (1937). This definition was:

A public purpose [or public business] has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents within a given political division[, as, for example, a state,] the sovereign powers of which are exercised to promote such public purpose or public business.

Two other states have discussed similar statutes. The State of Arkansas has passed a Freedom of Information Act and in ruling upon this Act the court held in *Laman v. McCord*, 245 Ark. 401, 432 S.W.2d 753 (1968), that whether a statute should be construed narrowly or broadly depended upon the interests with which the statute dealt and that statutes enacted for the public benefit were to be interpreted most favorably to the public. The court said that the legislature in Arkansas, as here, had declared that the state's public policy was that public business should not be conducted in secret and that it was therefore "vital in a democratic society that public business be performed in an open and public manner."

The open meetings law in Florida is known as the "Sunshine Law" (what else in Florida?) and in the case of *Board of Public Instruction v. Doran*, 224 So.2d 693 (Fla. 1969), the Supreme Court of Florida observed that statutes enacted for the public benefit should be interpreted most favorably to the public. They went on to point out that if the legislature in Florida had intended to include only formal assemblages for the transaction of business of the Board itself it would have been quite easy for them to do so but that where the obvious intent was to cover any gathering of the members where they would deal with matters on which foreseeable action would be taken by the Board in formal assembly, the Sunshine Law of Florida applied.

It is the opinion of this Court that as long as the bylaws of the University of Louisville Foundation, Inc. provide for a membership of a quorum of the Board of Trustees of the University of Louisville, meetings of the University of Louisville Founda-tion, Inc. are subject to the open meetings law, pursuant to the requirements of KRS 61.810 and the definition as provided in KRS 61.805(1). The purpose of the Foundation, under its bylaws, was to assist the University of Louisville in all "educational activities and enterprises of said University." Having determined that the University of Louisville is a public institution engaged in public education and having determined that public education is public business, it is clear that the meetings of the Foundation, as long as a quorum of the Board of Trustees are members thereof, are subject to the open meetings law.

The next issue to be discussed is whether the fact that the Board of Trustees, during its July 18, 1977, meeting, closed said meeting to consider the election of one of two individual members to the position of chairman of the Board of Trustees was a properly closed session under the provisions of KRS 61.810(6). This express exception to the open meetings statute reads as follows:

61.810. Exceptions to open meetings. —All meetings of a quorum of the members of any public agency at which any public business is discussed or at which any action is taken by such agency, are declared to be public meetings, open to the public at all times, except for the following:

. . . . .

(6) Discussions or hearings which might lead to the appointment, discipline or dismissal of an individual employe, member or student without restricting that employe's, member's or student's right to a public hearing if requested, provided that this exception is designed to protect the reputation of individual persons and shall not be interpreted to permit discussion of general personnel matters in secret.

The Act provides that the meeting may be properly closed if the discussion "might lead to the *appointment* . . . of an individual . . . member . . . , provided that this exception is designed to

protect the reputation of individual persons and shall not be interpreted to permit discussion of general personnel matters in secret." Appellants urge that "appointment" does not include "election." However, it is our belief and finding that there is no distinction between the two terms and that the meeting was properly closed pursuant to the exception set out in the statute.

The judgment of the lower court finding that the University of Louisville Foundation, Inc. is not a public agency under the provisions of Chapter 61 of the Kentucky Revised Statutes is affirmed. The judgment of the lower court finding that the July 18 meeting of the Board of Trustees was properly closed as it involved an exception defined under KRS 61.810(6) is affirmed. The portion of the judgment finding that the meetings of the University of Louisville Foundation, Inc. on April 18, 1977, and July 18, 1977, were not subject to the provisions of KRS 61.805–61.850 is reversed, and this case is remanded to the lower court for further proceedings consistent with this opinion, including the issuing of an injunction against the University of Louisville Foundation, Inc. from conducting closed meetings as long as a quorum of the members of the Board of Trustees continue their membership on the Board of Directors of said Foundation.

All concur.