UNIVERSITY OF ALASKA and Edward B. Rasmuson, Jeffry Cook, Don Abel, Jr., Herbert Lang, Mildred H. Banfield, Tim Burgess, Hugh B. Fate, Jr., Margaret J. Hall, Sam Kito, Jr., Thomas Miklautsch, and John Shively, Regents of the University of Alaska, in their Official Capacity, Appellants, Cross-Appellees,

v.

George A. GEISTAUTS, Appellee, Cross-Appellant.

Nos. 6749, 6771.

Supreme Court of Alaska.

June 17, 1983.

Terrance A. Turner, Owens & Turner, P.C., Anchorage, for appellants, cross-appellees.

John B. Patterson, Strachan, Kelly & Patterson, Anchorage, for appellee, cross-appellant.

Before BURKE, C.J., RABINOWITZ, MATTHEWS, and COMPTON, JJ.

OPINION

RABINOWITZ, Justice.

The University of Alaska brings this appeal from the superior court's grant of summary judgment in favor of Geistauts. The superior court ruled that the actions of the University of Alaska tenure committee with respect to Geistauts' application for tenure in 1979–80 were void because the committee failed to comply with the requirements of the Alaska Public Meetings Act (PMA), AS 44.62.310–.312. The superior court ordered that the same committee be reconvened to consider Geistauts' application, this time in compliance with PMA dictates.

The University argues on appeal that the PMA was not intended to regulate University tenure committee meetings. It first contends that the statute applies only to the Board of Regents of the University, and that, even if it does apply broadly to the University system, the tenure committee meetings in this case fell within certain statutory exceptions to the open meeting requirements.

Geistauts, on cross-appeal, asserts that the superior court erred in fashioning a remedy. The superior court ordered that the original tenure committee that considered Geistauts' application be reconvened to make a new recommendation. Geistauts argues that he is entitled to a *de novo* consideration by a new committee, as if the 1979–80 proceedings had never been instituted. He further claims that he is entitled to the full benefits of University employment until the time the new decision is reached, because he has not been properly terminated by the University.

George Geistauts had been a member of the faculty of the University of Alaska at Anchorage for five years when he elected to stand for tenure in the academic year of 1979–80. Under University regulations a faculty member is generally considered for tenure in his seventh year of service, but

candidates with prior experience at another university may elect to stand after their fifth year. Geistauts had taught for four years at Washington State University, so the option to stand was available to him in 1979–80. He chose to do so rather than wait an additional year.

The tenure procedure began with an evaluation of Geistauts' tenure file by the local tenure committee for the University of Alaska at Anchorage. The function of the tenure committee was to examine Geistauts' qualifications based upon his file, and to make a recommendation to the Chancellor of the University regarding the candidate's application. The tenure committee met a number of times in closed session to consider Geistauts' application. The committee notified neither Geistauts nor the public of the meetings. Furthermore, the committee did not inform Geistauts that he had the option of requesting that the meetings be open.

Following consideration of Geistauts' file, the tenure committee recommended to the Chancellor that the application be denied. In accordance with University regulations, the Chancellor met with the tenure committee and formed his own recommendation regarding Geistauts' application. The Chancellor's meeting with the committee was not public, and no notice of it was given to Geistauts. Again, Geistauts was not made aware of any right on his part to request that the meeting take place openly.

The Chancellor recommended to the President of the University, who held ultimate authority over the grant or denial of tenure, that Geistauts' application be denied. The President subsequently informed Geistauts that he would not be granted tenure.

Geistauts challenged the adverse decision through University grievance procedures. The University Grievance Committee recommended to the President that Geistauts' application be reconsidered. Accordingly, the President returned Geistauts' file to the tenure committee for a second evaluation. The committee reconvened under protest and met in closed session, with no notice to Geistauts. Upon reconsideration, the committee again recommended that Geistauts not be granted tenure, this time unanimously. Once more, the Chancellor's recommendation was for denial. For a second time, the President informed Geistauts of his decision to deny tenure.

Following the second denial, Geistauts brought suit in the superior court. By stipulation of the parties, Judge Johnstone dismissed all of Geistauts' claims save those based upon the public meeting statute. On that count the superior court granted summary judgment in favor of Geistauts. The superior court ruled that the meetings of the tenure committee had taken place in violation of AS 44.62.310 and AS 14.40.160 because they were not made open to the public.[1] All actions taken by the committee were therefore deemed void, and the court ordered that the committee be reconstituted as it existed in 1979–80 to consider for a third time Geistauts' credentials. The court, however, did not order that the meetings automatically take place in public. Rather, it required that Geistauts be given

1. *See infra* note 2 for the text of AS 44.62.310. AS 14.40.160 expressly provides that AS 44.62.-310 is applicable to the Board of Regents, stating in relevant part that:

(a) The provision[s] of AS 44.62.310 apply to meetings of the Board of Regents. All meetings of the board, its committees or subcommittees, are open to the public and press except as otherwise provided in AS 44.62.-310(c). The findings of an executive session shall be made a part of the record of the proceedings of the Board of Regents. All records of the meetings and proceedings shall be open to inspection by the public and the press at reasonable times.

(b) The Board of Regents may determine the time and place of its meetings. However, 30 days notice is required for all regular meetings and 10 days notice is required for special meetings of the Board of Regents, its committees or subcommittees called under the bylaws or rules of procedure of the Board of Regents. Emergency meetings may be called without notice.

The superior court's reliance upon AS 14.40.-160 was misplaced, since the statute applies only to the Board of Regents. Thus, we consider here only the merits of the superior court's decision that AS 44.62.310 applies directly to the decision-making process of the tenure committee.

an opportunity to request public meetings under AS 44.62.310(c)(2). In the event that Geistauts made such a request, the court ordered that the meetings should be opened as required by AS 44.62.310(a). This appeal followed.

## I. *Is the University of Alaska Subject to the Public Meetings Act?*

■ The first issue raised by this appeal is whether the local tenure committee which met to consider Geistauts' application is one of the governmental units subject to the open meeting requirements of AS 44.-62.310.[2] We have concluded that the local tenure committee of the University of Alaska comes within the ambit of the public meetings statute and thus affirm the superior court's ruling on this question.[3]

■ AS 44.62.310(a) contains a broad description of all the entities covered by the statute. Under the literal terms of the statute, the University of Alaska's local tenure committee can be considered either a subordinate unit of the state, or an advisory board, or council, supported in whole or in part by public money.[4] In reaching our conclusion that the clear and unambiguous

**2.** AS 44.62.310 provides:
*Agency meetings public.* (a) All meetings of a legislative body, of a board of regents, or of an administrative body, board, commission, committee, subcommittee, authority, council, agency, or other organization, including subordinate units of the above groups, of the state or any of its political subdivisions, including but not limited to municipalities, boroughs, school boards, and all other boards, agencies, assemblies, councils, departments, divisions, bureaus, commissions or organizations, advisory or otherwise, of the state or local government supported in whole or in part by public money or authorized to spend public money, are open to the public except as otherwise provided by this section. Except when voice votes are authorized, the vote shall be conducted in such a manner that the public may know the vote of each person entitled to vote. This section does not apply to any votes required to be taken to organize the afore-mentioned bodies.

(b) If excepted subjects are to be discussed at a meeting, the meeting must first be convened as a public meeting and the question of holding an executive session to discuss matters that come within the exceptions contained in (c) of this section shall be determined by a majority vote of the body. No subjects may be considered at the executive session except those mentioned in the motion calling for the executive session unless auxiliary to the main question. No action may be taken at the executive session.

(c) The following excepted subjects may be discussed in an executive session:

(1) matters, the immediate knowledge of which would clearly have an adverse effect upon the finances of the government unit;

(2) subjects that tend to prejudice the reputation and character of any person, provided the person may request a public discussion;

(3) matters which by law, municipal charter, or ordinance are required to be confidential.

(d) This section does not apply to

(1) judicial or quasi-judicial bodies when holding a meeting solely to make a decision in an adjudicatory proceeding;

(2) juries;

(3) parole or pardon boards;

(4) meetings of a hospital medical staff; or

(5) meetings of the governing body or any committee of a hospital when holding a meeting solely to act upon matters of professional qualifications, privileges or discipline.

(e) Reasonable public notice shall be given for all meetings required to be open under this section.

(f) Action taken contrary to this section is void.

**3.** The tenure committee is a subordinate unit of the University, which is a state organization. In *University of Alaska v. National Aircraft Leasing, Ltd.,* 536 P.2d 121 (Alaska 1975), we held that "the University of Alaska is an integral part of the state government and an instrumentality of the state in performing its educational function." *Id.* at 128. Because of this, we held that suits against the University were governed by the Alaska Tort Claims Act, AS 09.50.250–.300. *Id.* at 128–29. *See also Cathcart v. Andersen,* 85 Wash.2d 102, 530 P.2d 313 (Wash.1975) (en banc) (University of Washington and its law school held to be agencies of the state). Other cases where state "sunshine laws" were found applicable to committees within state university systems include *Courier-Journal and Louisville Times Co. v. University of Louisville Board of Trustees,* 596 S.W.2d 374 (Ky.App.1979); *Cooper v. Arizona Western College Dist. Governing Bd.,* 125 Ariz. 463, 610 P.2d 465 (Ariz.App.1980); *Arkansas Gazette Co. v. Pickens,* 258 Ark. 69, 522 S.W.2d 350 (Ark.1975); *Greene v. Athletic Council of Iowa State University,* 251 N.W.2d 559 (Iowa 1977).

**4.** *See supra* note 2 for the text of AS 44.62.-310(a).

language of AS 44.62.310 encompasses meetings of the University of Alaska's local tenure committee we find the University's arguments based upon legislative history and policy reasons unpersuasive.[5]

II. *Was the Failure of the University of Alaska's Local Tenure Committee to Consider Geistauts' Tenure Application at Open Public Meetings Harmless Error?*

The University bases its harmless error argument on *Hammond v. North Slope Borough,* 645 P.2d 750 (Alaska 1982). In *Hammond* one of the issues addressed by this court concerned the effect of AS 44.62.-310(f) which provides: "Action taken contrary to [AS 44.62.310] is void."

In *Hammond* we held that although the Agency Advisory Committee on Leasing (AACL) and the Joint Federal/State Beaufort Sea Task Force had violated the notice provision of AS 44.62.310(e), the violation was harmless. 645 P.2d at 764–66. We concluded that the Commissioner of the Department of Natural Resources reached his decision independently of the AACL and Task Force recommendations, and received

"substantial public input" from private sources and other state agencies. *Id.* at 765–66. We thus reasoned that there was insufficient ground upon which to declare the Commissioner's decision void under AS 44.62.310(f). *Hammond* presented a compelling fact situation in which a relatively insignificant violation of AS 44.62.310 was coupled with overwhelming prejudice which would have resulted from a conclusion that the five-year procedure leading up to the lease sale was void.

■ We reject the University's harmless error argument for the following reasons. First, AS 44.62.310(a) states that its provisions pertaining to public meetings shall apply to governmental units whether "advisory or otherwise." This language mandates rejection of a construction of AS 44.62.310(a) which would limit its scope to decision-making bodies only.[6] Second, in our view, the *Hammond* "harmless violation" doctrine should be invoked only in very limited circumstances. Third, assuming there is merit to the broad proposition that discussions remote to the actual decision might be considered outside the reach

**5.** Both parties recognize that there is no longer a plain meaning rule as such in Alaska law. Where a statute's meaning appears clear and unambiguous, however, the party asserting a different meaning bears a correspondingly heavy burden of demonstrating contrary legislative intent. *Municipality of Anchorage v. Sisters of Providence in Washington, Inc.,* 628 P.2d 22, 27 n. 6 (Alaska 1981); *State v. City of Haines,* 627 P.2d 1047, 1049 (Alaska 1981). Here the University has not met its burden.

Admittedly, the policy decision as to whether or not tenure committee meetings should be open is debatable. Nevertheless, the wisdom underlying a particular legislative enactment is not a justiciable question.

**6.** Compare *Pope v. Parkinson,* 48 Ill.App.3d 797, 6 Ill.Dec. 756, 363 N.E.2d 438 (Ill.App. 1977), where the Illinois appellate court decided that meetings between the Chancellor of the University of Illinois and a group of students and faculty members called the Assembly Hall Advisory Committee were not required to be open under the state sunshine law. The court relied on the facts that (1) the Committee was a purely advisory body with no power to bind the Chancellor and (2) the meetings dealt only with the internal affairs of the University. *Id.* 6

Ill.Dec. at 758–59, 363 N.E.2d at 440–41. Similarly, in *Daily Gazette Co. v. North Colonie Bd. of Ed.,* 67 A.D.2d 803, 412 N.Y.S.2d 494, 495 (N.Y.App.Div.1979), meetings of sub-committees of the board of education were held not within the coverage of New York's open meetings laws where the sub-committees were "not given any authority to make final decisions on any matters but merely [made] recommendations on various subjects to the entire board." The court found that, where *no actual decision* could be made, there was no transaction of "public business" as required for the invocation of the New York statute. *Id.* See also *Bennett v. Warden,* 333 So.2d 97, 100 (Fla.App. 1976) (college president's meetings with group of college employees not covered by Florida sunshine law where meetings constituted mere "fact-finding expeditions" and actual decision could not be made by that entity).

Modern public meetings statutes reject the argument that only the moment of ultimate decision must be subject to public scrutiny, and require that preliminary deliberations be open, as well. See *Town of Palm Beach v. Gradison,* 296 So.2d 473, 477 (Fla.1974); *Sacramento Newspaper Guild v. Sacramento Cty. Bd. of Supervisors,* 263 Cal.App.2d 41, 69 Cal.Rptr. 480, 485, 487 (Cal.App.1968).

of the public meetings statute, we think the doctrine inapplicable in this case. It is apparent that tenure committee recommendations do play a significant role in final tenure decisions.

### III. Is the AS 44.62.310(c)(2) Exception to the Public Meetings Act Applicable?

█ AS 44.62.310(c)(2) provides that closed executive sessions may be held to discuss "subjects that tend to prejudice the reputation and character of any person, provided the person may request a public discussion." We hold that AS 44.62.-310(c)(2) is applicable to tenure committee meetings. A tenure committee meeting is likely to focus on perceived deficiencies in the candidate's qualifications. Tenure committee members may raise concerns for the purpose of discussion which would damage the applicant's reputation if aired publicly.[7] In *City of Kenai v. Kenai Peninsula Newspapers*, 642 P.2d 1316, 1325–26 (Alaska 1982), we held that the exception set out in AS 44.62.310(c)(2) permitted the Kenai City Council to meet in closed session to review the comparative qualifications of applicants for the job of city manager. We noted that "a discussion of personal characteristics and habits may well carry a risk that the applicant's reputation will be compromised." *Id.* at 1326.

█ We are in agreement with Geistauts' further contention that the University's failure to give him adequate notice of the tenure committee's meetings deprived him of his right to request an open discussion pursuant to the provisions of AS 44.62.-310(c)(2). The sole purpose of a notice requirement under AS 44.62.310(c)(2) is to afford the employee with an opportunity to request a public discussion. In our view, requiring the governmental body to inform the individual only of the time and place of an upcoming meeting is inadequate notice. Some employees may not know of their right to request public discussions and thus, may neglect to invoke the statutory option for that reason alone. We therefore hold that the University was under the implied statutory obligation to inform Geistauts of the time and place of all meetings in which his application would be considered and to inform him that he had the right to request that the meetings be open to the public.[8]

### IV. Is the Quasi-Judicial Exception Provided for in AS 44.62.310(d)(1) Applicable Here?

█ AS 44.62.310(d)(1) provides that:

(d) This section does not apply to

(1) Judicial or quasi-judicial bodies when holding a meeting solely to make a decision in an adjudicatory proceeding. . . .

We reject the University's argument that the tenure committee meetings were "quasi-judicial" proceedings, and thus come within the exception to the public meeting requirements found in AS 44.62.310(d)(1). In our view, the tenure committee is not a "quasi-judicial body" and did not meet "solely to make a decision in an adjudicatory proceeding."[9]

---

**7.** Our reading of AS 44.62.310(c)(2) is that it was designed to serve the same function as the provisions in other states which exempt meetings concerning employment matters from sunshine law requirements. The reasoning behind the "personnel matters" exception in other jurisdictions appears to be the avoidance of embarrassment to employees whose strengths and weaknesses will be evaluated. *Rice v. Union Cty. Regional High School Bd. of Ed.*, 155 N.J. Super. 64, 382 A.2d 386, 390 (N.J.Super.1977); Comment, Open Meetings Statutes: The Press Fights for the "Right to Know," 75 Harv.L.Rev. 1199, 1208 (1962).

**8.** Such an implied notice requirement is necessary to give effect to AS 44.62.310(c)(2). The open meetings law is a technical regulation. It would be unrealistic to presume that public employees generally are familiar with their rights under subsection (c)(2). We conclude that the marginal additional burden upon state entities is mandated in order to ensure meaningful operation of the statute.

**9.** *But see Pierce v. Lake Stevens School Dist. No. 4, Snohomish Cty.*, 84 Wash.2d 772, 529 P.2d 810 (Wash.1974) (en banc); *Brazil v. Babb*, No. 805360 (Wash. King Cty.Super.Ct., June 15, 1976).

The Washington public meetings statute did not apply to

[t]hat portion of a meeting of a quasi-judicial body which relates to a quasi-judicial matter

## V. The Effect of the University's Failure to Comply With the Public Meetings Law.

As a consequence of its holding that all actions of the tenure committee were void because of the University's noncompliance with the public meetings law, the superior court ordered in part the following relief:

1. That, the U of A [University of Alaska] is ordered to reconvene the Committee as it was constituted during the time that it originally considered plaintiff's tenure application for the purposes of again reconsidering such application . . . .

2. Such reconsideration shall be based upon plaintiff's tenure file as it existed during the Committee's prior consideration of his tenure application; and plaintiff shall have no right to update or supplement his file prior to such reconsideration by the Committee.

3. Plaintiff shall be treated for the purposes of such tenure application reconsideration as if he were still a member of the UAA [University of Alaska at Anchorage] faculty and plaintiff shall not be prejudiced by his bringing or prosecuting this suit; but plaintiff shall have no right to actual reinstatement or any employee benefits pending such reconsideration and shall have service credits under the Alaska Teachers Retirement System for time that he has not actually been employed by the UAA [University of Alaska at Anchorage], only in the event that reconsideration results in granting of tenure.

In his cross-appeal, Geistauts argues that the relief granted by the superior court was inadequate and attacks the foregoing portions of the superior court's judgment.[10] The remedial provision of Alaska's public meetings law states that "[a]ction taken contrary to this section is void."[11] The parties agree that if a violation of the PMA is found in this case, the 1979–80 tenure committee recommendation is void. The

dispute on cross-appeal involves the consequences of such voidness. Geistauts argues that the University must begin anew its review of his tenure application as if the flawed consideration had never taken place. He asserts that he is entitled to all the benefits of ongoing employment up until the time of a new consideration and that he should be entitled to update his tenure file with recent academic accomplishments.

In support of the superior court order, the University advances a different view of the appropriate remedy. It argues that the 1979–80 tenure committee evaluation should be repeated, and that Geistauts' denial should be allowed to stand if the replicated tenure review procedure—this time in accordance with the PMA—yields the same result reached in 1979–80.

 We find ourselves persuaded by Geistauts' argument regarding the consequences of voidness. The plain meaning of the statute disfavors the University. The word "void" is defined in Black's Law Dictionary as "[n]ull; ineffectual, nugatory; having no legal force or binding effect." Black's Law Dictionary 1745 (4th ed. 1957). We endorsed that definition in *Walters v. Cease,* 388 P.2d 263, 267 (Alaska 1964).

The consequences of our adopting Geistauts' theory of voidness, in the context of this litigation, is that the superior court's judgment should be modified in the following respects. Geistauts shall be reinstated for the 1983–84 academic year and shall have the option of making an application for tenure following this period. In the event that Geistauts applies for tenure, his application should be considered by the then-current tenure committee rather than by an *ad hoc* committee composed in part of members who served on the committee in 1979–80. In the event Geistauts does apply, his tenure file shall be brought current be-

---

between named parties as distinguished from a matter having general effect on the public or on a class or group . . . .
*Pierce,* 529 P.2d at 819.

10. In its appeal the University also questions the superior court's judgment as it relates to the vesting of pension rights for Geistauts.

11. AS 44.62.310(f).

fore the tenure committee considers his application.[12]

The superior court's judgment as modified by this opinion is AFFIRMED.

12. Inherent in the foregoing is our affirmance of the portion of the superior court's judgment which relates to employee benefits and service credits under the Alaska Teachers Retirement System.