Charles R. RAMSEY, Appellant,

v.

CITY OF SAND POINT, Appellee.

No. S–7344.

Supreme Court of Alaska.

April 11, 1997.

John C. Dittman, Law Offices of John C. Dittman, P.C., and Terry A. Venneberg, Law Offices of Terry A. Venneberg, Anchorage, for Appellant.

Thomas M. Daniel and Gordon J. Tans, Perkins Coie, Anchorage, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

*OPINION*

FABE, Justice.

## I. *INTRODUCTION*

Charles R. Ramsey brought suit against the City of Sand Point, alleging that his employment as police chief had been wrongfully terminated. The superior court granted summary judgment in favor of the City of Sand Point on all of Ramsey's claims, including his claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Open Meetings Act, and violation of his due process rights under the Alaska Constitution. Ramsey appeals the superior court's decision granting summary judgment and its denial of a motion to

compel discovery. We affirm the superior court.

## II. *FACTS*

The City of Sand Point (City) hired Charles Ramsey as its police chief in May 1991 under a two-year employment contract. In early 1993, as the expiration of this first contract approached, Ramsey and the City, through its attorney Tim Troll, began negotiating a new contract. The parties executed a three-year employment contract for Ramsey to begin in May 1993. During the negotiation of the new contract, Ramsey consulted with his sister, who is an attorney, about the wording of the contract. Ramsey sent his sister copies of his first contract, as well as his rough drafts of a second contract. She sent back her suggestions.

Ramsey proposed the addition of a section authorizing the City to terminate his contract without cause in exchange for six months' severance pay. At the time, Ramsey was aware of the municipal ordinance stating that the police chief "may be removed only for just cause."[1] The section proposed by Ramsey defined "cause" to encompass a narrower range of behavior than "just cause" as provided in the ordinance and required thirty days' written notice before termination. The City accepted this proposal and incorporated it into the contract. This section provided:

*SECTION III. TERMINATION*

A. In the event Chief is terminated by the City Council for any reason besides cause as defined below during such times as he is willing and able to perform the duties of Chief of Police, the City agrees to pay Chief a severance of six month's [sic] pay. However, if Chief is terminated for cause, which shall be willful misconduct or gross negligence in the performance of duties[,] or fails to maintain and/or qualify for certification by the Alaska Police Standards Council, the severance pay provisions of this paragraph shall not apply.

City shall provide Chief with thirty (30) days advance written notice of termination or termination shall be deemed ineffective.

In August 1993 the police responded to a call from the manager of the Sand Point Tavern concerning an intoxicated person. Two officers were escorting an intoxicated patron out of the bar when they apparently were accosted by other patrons, resulting in a brawl. Chief Ramsey arrived at the tavern and assisted his officers in arresting a number of the citizens present. Following this incident, a group of citizens, including those arrested at the Sand Point Tavern, circulated a petition in the community calling for the dismissal of Ramsey and another officer. The petition was signed by approximately 120 residents and alleged that Ramsey should be removed from office due to the use of excessive force in making arrests at the Sand Point Tavern. The petition also stated that Ramsey had "created a situation where people will not call the police for help because they are afraid of the police."

The petition was presented to the city council at the end of its regularly scheduled meeting on October 18, 1993. In conjunction with the presentation of the petition, numerous citizens testified that Ramsey should be removed from office. Ramsey knew that this petition for his dismissal would be presented at the city council meeting. However, as he later explained in his deposition, he did not attend the meeting because he did not think it was the proper forum in which to defend himself against the allegations. After the comments were finished, the city council adjourned to executive session to discuss the petition. Later that night the city council meeting was recessed, to re-adjourn the next afternoon at 3:30 p.m. The next morning the City Attorney, Timothy Troll, met with both Ramsey and another officer, seeking their resignations. Although the other officer tendered his resignation, Ramsey refused to do

---

1. Sand Point Municipal Ordinance (SPMO) 03.70.020 provides:

> The police chief shall be appointed by the mayor subject to confirmation of the council. His appointment shall be for an indefinite period of time, depending on his good conduct and efficiency. He shall be technically qualified through training and experience and shall have the ability to command men. He may be removed only for just cause.

so.[2] Troll informed Ramsey that he had a right to be present at the executive session that afternoon and that he could talk to the council. Ramsey declined.

The city council reconvened in executive session that afternoon and, after approximately an hour and a half of discussion, went back into public session. During the public meeting, the council voted to terminate Ramsey pursuant to Section II.A of his contract. The council agreed to pay Ramsey one additional month's pay and to provide one additional month's free housing in lieu of giving the thirty-day notice of termination required in the contract. The City also paid Ramsey the additional six months' salary required by Section III.A of his employment contract, and he accepted this payment.

Ramsey filed suit against the City alleging five claims: (1) breach of his employment contract by discharging him without cause; (2) breach of his employment contract by not providing 30 days' notice of termination; (3) breach of the implied covenant of good faith and fair dealing; (4) violation of the Open Meetings Act; and (5) violation of his due process rights under the Alaska Constitution.

The superior court granted the City's motions for summary judgment on all five claims. On the breach of contract claim, the court held that Ramsey had waived the protection of SPMO 03.70.020 requiring "just cause" for dismissal because, with full knowledge of the ordinance's protection, he proposed the language that was inserted in his contract permitting dismissal without cause upon payment of six months' severance pay. The trial court also held that the City's failure to give thirty days' notice of termination was cured by its payment of thirty days' salary and provision of thirty days of housing in lieu of notice. The superior court concluded that the City had not breached the implied covenant of good faith and fair dealing in Ramsey's contract because the City did not try to deprive him of the benefits of his contract in bad faith or act unfairly. The court also held that the covenant could not be read to vary the express terms of a contract. Because Ramsey's contract expressly autho-

rized termination without cause if the severance payment was made, the court found that the covenant was not violated.

On the Open Meetings Act claim, the trial court held that the city council meeting was properly noticed. The court found that the council's discussion of Ramsey's employment in executive session was proper under AS 44.62.310(c)(2) and that Ramsey waived his right to request a discussion in public by failing to appear at the meeting. Finally, the superior court determined that Ramsey's only property interest was in the thirty-day notice period required before termination and in six months' severance pay if the City terminated him without cause. The superior court reasoned that the City's payment of seven months' severance pay removed any prejudice Ramsey may have suffered from the alleged denial of due process. Ramsey appeals.

### III. DISCUSSION

#### A. Standard of Review

Summary judgment will be affirmed if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *In re Estate of Evans*, 901 P.2d 1138, 1140 (Alaska 1995). All reasonable inferences are drawn in favor of the non-moving party. *R.E. v. State*, 878 P.2d 1341, 1345 (Alaska 1994). This court reviews a grant of summary judgment *de novo*. *Tongass Sport Fishing Ass'n v. State*, 866 P.2d 1314, 1317 n. 7 (Alaska 1994).

#### B. Did Ramsey's Employment Contract Authorize the City to Terminate Him without Just Cause?

The superior court found that when Ramsey negotiated the provision in his contract giving the City the right to terminate him without cause in exchange for six months' severance pay, he waived the protection of SPMO 03.70.020, which allowed removal of the police chief only for just cause. The court found that

---

**2.** Ramsey apparently declined to resign because if he waited to be fired he would receive six

months' severance pay under his employment contract.

[w]hen Ramsey was negotiating his contract with the City he was aware that the ordinance existed. Nonetheless, he negotiated for and wrote the above quoted provision, which gave the City the right to terminate him without cause. In exchange, he received the right to receive six months severance pay if he was terminated without cause. This amounts to the intentional relinquishment of a known right.

Ramsey contends that the superior court erred in finding waiver. He concedes the existence of the contractual provision allowing termination without "cause" but contends that the provision in SPMO 03.70.020 requiring "just cause" for termination governs. Ramsey maintains that the City did not have the authority to enter into a contract inconsistent with its ordinance, reasoning that the prohibition against removal of the police chief without "just cause" contained in SPMO 03.70.020 is for the protection and benefit of the community and can not be waived. Alternatively, Ramsey maintains that even if SPMO 03.70.020 could be waived, he did not manifest the intent to do so, nor did he engage in any conduct sufficient to abandon or waive the protections of the ordinance.

1. *Did Ramsey waive the protection of the "just cause" requirement in SPMO 03.70.020?*

■ The superior court relied on *Milne v. Anderson,* 576 P.2d 109 (Alaska 1978), in finding that Ramsey had waived the protection of the "just cause" requirement in the ordinance. In *Milne,* we described the principle of waiver as "the intentional relinquishment of a known right" and explained that an implied waiver "arises where the course of conduct pursued evidences an intention to waive a right, or is inconsistent with any other intention than a waiver." *Id.* at 112. Ramsey was aware of the provision in SPMO 03.70.020 allowing the City to terminate the police chief only for "just cause" at the time

he negotiated his second contract with the City. Despite the protection of the ordinance, Ramsey negotiated for a contract which specifically permitted the City to terminate him without cause as long as it paid a severance of six months' salary. Ramsey's contract with the City also defined "cause" as "willful misconduct or gross negligence in the performance of duties," a narrower definition of the term than that contained in SPMO 03.70.020. This definition thus increased Ramsey's opportunity to receive the six months' severance pay upon termination.[3] Ramsey, with the assistance of an attorney, proposed the language contained in Section III.A allowing the City to terminate him without cause. That language is inconsistent with retention of the protection of the "just cause" requirement in the ordinance. Ramsey was paid and accepted the six months' severance pay. Therefore, the superior court was correct in finding that Ramsey waived the protection of SPMO 03.70.020.

2. *Does public policy dictate that a waiver of SPMO 03.70.020 cannot be recognized?*

■ Ramsey contends that public policy prevents the waiver of the protection of SPMO 03.70.020. He argues that the ordinance reflects a public policy of the City "that the police chief would not be subject to dismissal on a whim by the City Council," and therefore could not be waived by the contract between Ramsey and the City. The City responds that SPMO 03.70.020 benefitted only the police chief and was not enacted to promote any important public interest.

■ Under the well-established rule, "parties may agree to waive statutory rights unless a question of public policy is involved, or where rights of third parties, which the statute was intended to protect, are involved." 17A Am.Jur.2d *Contracts* § 256, at 259–60 (1991). Thus, a statute is waivable if it was designed for the protection of the

---

**3.** When asked why, with knowledge of SPMO 03.70.020, he proposed the section of his contract allowing termination without cause if the City paid him six months' severance pay, Ramsey answered that he did not believe that the ordinance would protect him because he would not have the resources to fight a termination in violation of the ordinance. Instead, he bargained for severance pay as a form of liquidated damages for any termination without cause. This contractual exchange of benefits evidences both parties' intent for Ramsey to waive the protection of the ordinance.

individuals who are parties to the contract, but is not waivable if it was enacted for the protection of the public generally. *Id.; see, e.g., McAlpine v. McAlpine,* 679 So.2d 85, 93 (La.1996) (waiving permanent alimony after divorce); *Sanitary Commercial Servs., Inc. v. Shank,* 57 Ohio St.3d 178, 566 N.E.2d 1215, 1218 (1991) (waiving right to appeal); *State ex rel. Bd. of County Comm'rs v. Board of Directors,* 75 Ohio St.3d 611, 665 N.E.2d 202, 208 (1996) (waiving a statutory claim to equitable division of assets); and *Francam Bldg. Corp. v. Fail,* 646 P.2d 345, 348 (Colo.1982) (waiving statutory requirement that a landlord give a tenant three days' notice to pay rent or quit the premises). This test arises from the rule that "[w]here no principle of public policy is violated, parties are at liberty to forego the protection of law. . . . Where, however, the object of a statute is to promote great public interests, liberty, or morals, it cannot be defeated by any private stipulation." *Griffith v. New York Life Ins. Co.,* 101 Cal. 627, 36 P. 113, 117 (1894) (citations omitted).

In a case similar to the present one, the Wisconsin Supreme Court held that the terms of a contract between the City of Madison and its police officers prevailed over a city ordinance. The Wisconsin Supreme Court stated:

> While it is true . . . that parties cannot contract to violate a law or ordinance, that rationale is a general statement which has no bearing where, as here, the ordinance is a specific one and is targeted at the exact audience with whom the contract negotiations are undertaken. Instead, that restriction must be limited to situations where the law or ordinance which arguably controls is one which targets a general group, so that it would be against public policy to allow one sub-group, and one sub-group only, to escape the operation of the law by means of a contract.

*City of Madison v. Madison Professional Police Officers Ass'n,* 144 Wis.2d 576, 425 N.W.2d 8, 14 (1988).

The provision in SPMO 03.70.020 that the police chief may only be terminated for "just cause" is for the benefit of the parties to the contract at issue in this case and does not affect the rights of third parties or the public generally. Thus, Ramsey's waiver of the "just cause" provision in the ordinance is valid. We affirm the superior court's grant of summary judgment to the City on this issue.

C. *Did the City's Termination of Ramsey Violate His Due Process Rights?*

■ Ramsey claims that the City violated his right to due process under article I, section 7 of the Alaska Constitution by terminating him without notice and without a hearing.

The superior court granted summary judgment to the City on this issue, stating:

> The first step in analyzing a due process claim is to determine whether the plaintiff has been deprived of life, liberty or property as defined under the Due Process Clause. *Breeden v. City of Nome,* 628 P.2d 924, 926 (Alaska 1981).
>
> In the present case, Ramsey had a property interest in continued employment for the thirty day notice period provided for in the contract. Ramsey also had a property interest in six months severance pay if the City terminated him without cause.
>
> Upon terminating Ramsey, the City paid him seven months severance pay. By making this payment, the City removed any prejudice Ramsey may have suffered from the alleged denial of due process. *See Breeden,* 628 P.2d at 927. Consequently, Ramsey's due process is extinguished, and the City is entitled to summary judgment on this issue.

1. *Property interest*

■ Ramsey contends that the property interest he held in his continued employment with the City went beyond the thirty-day notice period set out in his contract. Ramsey argues that the City deprived him of this property interest when he was terminated without notice and a pre-termination hearing.

The City responds that Ramsey's contract provided that he could be discharged without cause upon thirty days' notice, and thus he had no property interest in continued employment past the thirty-day period.

A public employee who serves at the pleasure of his employer can have no expectation of continued employment and therefore does not have a property interest in his job. *Bishop v. Wood,* 426 U.S. 341, 344–347, 96 S.Ct. 2074, 2077–2079, 48 L.Ed.2d 684 (1976); *Breeden v. City of Nome,* 628 P.2d 924, 926 (Alaska 1981). In *Breeden* the plaintiff had an employment contract terminable at will upon thirty days' notice. We held that Breeden's property interest in continued employment was limited to the thirty-day notice period. *Breeden,* 628 P.2d at 927; *see also Bishop,* 426 U.S. at 344–47, 96 S.Ct. at 2077–79 (holding that public employee who serves at pleasure of employer has no expectation of continued employment, and therefore no property interest in job); *Brady v. Gebbie,* 859 F.2d 1543, 1548 (9th Cir.1988), *cert. denied,* 489 U.S. 1100, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989); *Roley v. Pierce County Fire Protection Dist. No. 4,* 869 F.2d 491, 494 (9th Cir.1989). Ramsey's contract was at will. Therefore, we hold that Ramsey had a property interest only in the thirty-day notice period required under his contract.

Ramsey was deprived of this property interest without due process when he was terminated without notice. However, in *Breeden* we held that the city could "remove any prejudice resulting from its denial of due process by ... allowing Breeden the compensation which he would have been due for that time." *Breeden,* 628 P.2d at 927. In this case, the City compensated Ramsey for the entire thirty-day period, thus removing any prejudice resulting from the lack of notice. Therefore, we affirm the superior court's decision granting summary judgment on this issue.[4]

### 2. Liberty interest

Ramsey also contends that the City deprived him of his liberty interest because he was terminated under "a cloud of allegations concerning use of excessive force, and was not afforded an opportunity to address the charges at a pre-termination hearing." Ramsey, relying on *Revelle v. Marston,* 898 P.2d 917 (Alaska 1995), argues that the circumstances surrounding his termination implicate his liberty interest under the Alaska Constitution.

In *Revelle,* this court affirmed the superior court's determination that an employer's negative job evaluation did not infringe upon a liberty interest because it did not impugn the employee's honesty, integrity or morality. *Id.* at 926. This court reasoned:

> The Ninth Circuit has stated that in order to infringe upon an employee's liberty interest, an employer's negative remarks must belittle the employee's "worth and dignity as an individual," so as to have "severe repercussions outside of professional life." *Stretten v. Wadsworth Veterans Hosp.,* 537 F.2d 361, 366 (9th Cir. 1976). For example, remarks that impose a stigma of moral turpitude, such as charges of immorality or dishonesty, intrude upon the liberty interest. Negative remarks about an employee's job performance primarily affect the employee's professional life alone, and generally are not considered so stigmatizing as to harm reputation or foreclose future employment.

*Id.*

In the present case, a group of Sand Point citizens accused Ramsey of using excessive force. This accusation does not implicate Ramsey's liberty interest because the accusation directly concerns his professional performance and does not impugn his honesty, integrity or morality. Further, the charge of excessive force was made by private citizens, not the City. *See Fleisher v. City of Signal Hill,* 829 F.2d 1491, 1495 (9th Cir.1987) (holding that liberty interest implicated only if the employer creates and disseminates a false and defamatory impression about the employee in connection with termination), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988). The city council cited no

---

4. Ramsey also claims that the City breached his employment contract when it failed to give him thirty days' written notice of his termination. He maintains that by failing to give the required notice, the City's attempt to terminate him was ineffective as a matter of law. The superior court was correct in its finding that the City's breach of the thirty-day notice provision in Ramsey's employment contract was cured by the City's payment to Ramsey of thirty additional days of salary.

official reason for Ramsey's termination. The council simply voted to exercise its right to terminate Ramsey's contract pursuant to the no-cause provision. We thus affirm the superior court's decision granting the City summary judgment on Ramsey's due process claim.

### D. Did the City Breach the Implied Covenant of Good Faith and Fair Dealing in Ramsey's Employment Contract When It Terminated Him?

■ An implied covenant of good faith and fair dealing exists in all at-will contracts. *Revelle v. Marston*, 898 P.2d 917, 926 (Alaska 1995). The covenant has both subjective and objective elements. *Luedtke v. Nabors Alaska Drilling, Inc.*, 834 P.2d 1220, 1224 (Alaska 1992). An employer engages in subjective bad faith when it discharges an employee for the purpose of depriving him or her of one of the benefits of the contract. An illustration of this principle is found in *Mitford v. de Lasala*, 666 P.2d 1000, 1007 (Alaska 1983), where this court held that the termination of an at-will employee for the purpose of preventing him from receiving a promised share of future profits violated the covenant.

■ Ramsey's employment contract authorized the City to terminate him without cause, so long as it gave him thirty days' notice of the termination. This was an at-will contract and as such, contained an implied covenant of good faith and fair dealing. Ramsey has not claimed that the City discharged him for the purpose of depriving him of the benefits of his employment contract, as was the case in *Mitford*. The only relevant benefits guaranteed to Ramsey—thirty days' notice and six months' severance pay—were realized by Ramsey when the City paid him seven months' additional salary upon termination. The superior court found that the subjective element of the covenant was not implicated in this case. We agree that no genuine issue of material fact has been raised on this issue.

■ The covenant of good faith and fair dealing also includes an objective standard, under which the employer must "act in a manner which a reasonable person would regard as fair." *Luedtke*, 834 P.2d at 1224.

The superior court found that Ramsey's contract expressly provided that he could be terminated without cause, and therefore it was not a violation of the covenant of good faith and fair dealing to terminate Ramsey without investigating the allegations in the petition. Ramsey contends that the superior court erred when it granted summary judgment on his good faith and fair dealing claim because a jury could find that he was treated unfairly by the City.

■ The covenant of good faith and fair dealing is implied in every contract in order to effectuate the reasonable expectations of the parties to the agreement, not to alter those expectations. *See Mitford*, 666 P.2d at 1007. The covenant of good faith cannot be interpreted to prohibit what is expressly permitted by Ramsey's contract with the City. *See Carma Developers v. Marathon Dev. California*, 2 Cal.4th 342, 6 Cal.Rptr.2d 467, 485, 826 P.2d 710, 728 (1992). This conclusion is consistent with our decision in *Jones v. Central Peninsula Gen. Hosp.*, 779 P.2d 783, 789 (Alaska 1989). There, the plaintiff argued that it was a violation of the implied covenant of good faith and fair dealing for her employer to deny her a grievance hearing. We rejected that contention because the employee manual expressly provided that supervisors were not entitled to the benefits of the grievance procedure. *Id.*

Ramsey's employment contract authorized the City to terminate him for any reason whatsoever, so long as it paid him an additional six months' salary as severance pay. As a matter of law, a jury could not find the City's termination without an investigation violated the implied covenant. Therefore, we affirm the superior court's grant of summary judgment on this issue.

### E. Did the Superior Court Err in Failing to Find Violations of the Open Meetings Act

For bodies such as the city council, the Open Meetings Act requires: "Reasonable public notice shall be given for all meetings required to be open under this section. The notice must include the date, time, and place of the meeting...." AS 44.62.310(e). The

Open Meetings Act provides that certain excepted subjects may be discussed in an executive session that is not open to the public, including "subjects that tend to prejudice the reputation and character of any person, provided the person may request a public discussion." AS 44.62.310(c)(2).

The superior court determined that the city council meeting held on October 18 was properly noticed with the "date, time, and place of the meeting," as required by AS 44.62.310(e). The court further found that the city council's decision to meet in executive session to discuss the citizens' petition was proper under AS 44.62.310(c)(2) and that Ramsey's decision not to appear at the meeting constituted a waiver of his right to request that the council discuss the petition publicly. In granting the City's motion for summary judgment on this issue, the court emphasized that the council decided to terminate Ramsey during the public session of the meeting on October 19, 1993.

 Ramsey argues that the superior court's conclusion was error. Relying on *University of Alaska v. Geistauts*, 666 P.2d 424 (Alaska 1983), Ramsey maintains that the city council had a duty to notify him that his employment would be discussed during the council's executive session. In *Geistauts* we held that the "sole purpose of a notice requirement under AS 44.62.310(c)(2) is to afford the employee with an opportunity to request a public discussion." *Geistauts*, 666 P.2d at 429. Thus, the employer in that case was under "the implied statutory obligation to inform Geistauts of the time and place of all meetings in which his application [for

tenure] would be considered and to inform him that he had the right to request that the meetings be open to the public." *Id.* at 429. Ramsey argues that the City failed to provide him with this notice and thus violated the Open Meetings Act. Ramsey's case is easily distinguishable from *Geistauts*. Geistauts was not notified about any of the meetings regarding his tenure, and there is no evidence that he would not have attended had he been notified. Ramsey, on the other hand, knew that the petition would be presented at the October 18th meeting and chose not to attend. The City also informed him that his employment would be discussed during executive session on October 19, and it extended an invitation to Ramsey to attend that discussion in order to present his point of view. Again, he chose not to go.[5]

 While the council did not inform Ramsey that he could request a public discussion of his employment, Ramsey chose not to attend the meeting, in part because he did not want the subject discussed publicly.

Q So you didn't go to the council meeting because you thought this group of people was going to get up and make bad statements about the police department?

A In effect, yes. And I also probably in the back of my mind thought "Well, if they say things that are either untrue or something that makes me angry, I might say something that's unprofessional", so I would avoid that by not even going.

A Mr. Troll came in at some time in the morning. I had been there a while so it was after I normally go there.... As I recall, I said to him, "Well, I hear you had a late meeting last night" ... and his response was ... "Well, I think it's time that we work out an agreeable separation"....

....

Q When you met with Tim Troll that morning of October 19, did he tell you or invite you to come appear before the council?

A I believe he informed me that I had a right, and asked me did I want to go talk to the city council, and I said no.

---

5. Ramsey's testimony clearly demonstrates that he was aware that his employment as police chief was scheduled to be a topic of discussion at the council meetings on October 18 and 19.

A I didn't go to that meeting because I heard there was going to be all these people stand up and do whatever they were going to do at the end regarding this petition, and in my opinion that was not the forum to defend myself or the police department. So I wasn't going to sit there and listen to all the hogwash that I was expecting.

....

Q And then the next morning, who did you hear from that the city council was, in fact, concerning [sic] terminating your employment?

Any inadequacy of notice to Ramsey was thus harmless since, as his testimony made clear, he chose not to exercise his right to a public discussion of the issues relating to his employment. *See Hammond v. North Slope Borough,* 645 P.2d 750, 765–66 (Alaska 1982). We also note that actual notice cures any defect in formal notice given under the Open Meetings Act. *North State Tel. Co. v. Alaska Pub. Utils. Comm'n,* 522 P.2d 711, 714 (Alaska 1974) (stating that "defects in administrative notice may be cured by other evidence that the parties knew what the proceedings would entail)." [6]

### F. Was the Superior Court's Denial of Ramsey's Motion to Compel Discovery an Abuse of Discretion?

■ The superior court denied Ramsey's motion to compel discovery of all documents concerning the arrest or other police contact of the council members, the mayor, and the people who signed the petition to oust him as police chief on March 24, 1995. Ramsey argues that the superior court erred when it refused to compel discovery of these documents. Ramsey contends that these records were discoverable under Civil Rule 26(b)(1), which provides that "[p]arties may obtain discovery regarding any matter, not privileged which is relevant to the subject matter involved in the pending action." Ramsey maintains that these records were relevant, and therefore discoverable, because they would have illustrated the bias of both those who sought to have him removed from office and those who decided to remove him from office.

The City maintains that the superior court was correct in denying discovery of these documents because they are irrelevant to the issues in this case. We agree. If cause were required under Ramsey's contract with the City to terminate his employment, then he might be entitled to such discovery. However-er, since Ramsey's employment contract gave the City the right to fire Ramsey for any reason at all, the requested documents are irrelevant. To hold otherwise would be to resurrect the requirement of "just cause" for termination which Ramsey bargained away.

■ Ramsey also claims that he is entitled to inspect the requested documents pursuant to the Public Records Act. The Public Records Act provides in relevant part:

(a) Every person has a right to inspect a public record in the state . . . except

. . . .

(6) records or information compiled for law enforcement purposes, but only to the extent that the production of the law enforcement records or information

. . . .

(C) could reasonably be expected to constitute an unwarranted invasion of the personal privacy of a suspect, defendant, victim, or witness. . . .

AS 09.25.120(a). The citizens of Sand Point have a reasonable expectation that their contacts with the police department will not be publicly disclosed simply because they signed a petition. The superior court did not abuse its discretion in denying discovery of the requested documents, and we therefore affirm the superior court's denial of Ramsey's motion to compel discovery.

### IV. CONCLUSION

For the foregoing reasons we AFFIRM the superior court's grant of summary judgment in favor of the City, disposing of all of Ramsey's claims against the City. We also AFFIRM the superior court's order denying Ramsey's motion to compel discovery.

---

6. Ramsey also maintains that AS 44.62.310(b) was violated. This section of the Open Meetings Act provides that "action may not be taken at the executive session." There is conflicting testimony as to whether the council instructed the city attorney, Timothy Troll, to seek the resignation of Chief Ramsey during the executive session on the evening of October 18, 1993. It is undisputed that Troll did seek the resignation of Ramsey after the executive session was recessed on the evening of October 18, and before the executive session was reconvened in the afternoon on October 19, suggesting that such an instruction was given. However Ramsey challenges the City's decision to terminate his employment, which was done during public session, not the decision to request his resignation. Therefore, that violation is not relevant to this appeal.