Keith REVELLE, Appellant
and Cross–Appellee,

v.

Wilda MARSTON; Mayor Tom Fink; the
Municipality of Anchorage; and the An-
chorage Library Advisory Board, Appel-
lees and Cross–Appellants.

Nos. S–5463, S–5493.

Supreme Court of Alaska.

June 16, 1995.

Don Clocksin, Sonosky, Chambers, Sachse, Miller, Munson & Clocksin, Anchorage, for appellant/cross-appellee.

Stephanie Galbraith Moore, Asst. Mun. Atty., and Richard L. McVeigh, Mun. Atty., Anchorage, for appellees/cross-appellants.

Before RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ., and ALEXANDER O. BRYNER, J. pro tem.[*]

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION

In January 1988 the newly elected Mayor of the Municipality of Anchorage, Tom Fink, terminated Keith Revelle's employment as Head Librarian for the Municipality. Mayor Fink relied on an evaluation that the Anchorage Library Advisory Board (LAB) had formulated at a meeting held in violation of the Open Meetings Act. In this appeal, Revelle seeks *inter alia* an award of back pay and attorney's fees from the LAB's chair, Wilda Marston, Mayor Fink, the Municipality of

Anchorage, and the LAB (collectively, "the Municipality").

### II. FACTS

Keith Revelle was the Head Librarian of the Anchorage Municipal Library from 1977 to early 1988. From 1986 to 1988 his position has carried the status of a department head, making Revelle a municipal executive. All executive employees of the Municipality serve at the pleasure of the Mayor.[1] Under the Municipality's personnel rules, evaluations of Revelle's performance were the responsibility of the Mayor and the Municipal Manager. The Municipal Manager was Revelle's direct supervisor. As part of his duties Revelle served as the executive secretary and technical advisor for the LAB, and attended all LAB meetings. Anchorage Municipal Code (AMC) 4.60.040(A).

From 1983 through 1987, the LAB periodically met to evaluate Revelle's performance as Head Librarian. These meetings were not part of the regular meeting schedule, were not open to the public, took place without notice to the public or Revelle, and occurred outside of Revelle's presence.

The parties dispute whether the LAB's authorized functions included evaluation of the Municipal Librarian's performance.[2] However, in his affidavit, Mayor Fink acknowledged that "it is not the duty and responsibility of the Library Advisory Board to provide evaluations of library or administration personnel and [that] the Library Advisory Board is not in the personnel chain." Furthermore, the Municipality expressly acknowledged that evaluating the Municipal Librarian was an act outside of the LAB's regular duties.

In 1985, the chair of the LAB, Wilda Marston, forwarded a negative evaluation of Revelle's performance to the Municipal Manag-

---

[*] Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. Article V, § 5.02(a) of the Home Rule Charter for the Municipality of Anchorage states:

 The Mayor shall appoint all heads of municipal departments, subject to confirmation by the Assembly, on the basis of professional qualifications. Persons appointed by the Mayor serve at the pleasure of the Mayor.

2. One of the LAB's functions was to "[m]ake recommendations to the administration and Assembly for the adoption, change, repeal or alteration of rules, regulations, restrictions on library services, and all other matters directly or indirectly affecting the municipal library program." AMC 4.60.040(B). The Municipality cursorily argues that this provision permitted the LAB to evaluate Revelle's performance.

er, Bob Smith. Smith did not consider the 1985 evaluation appropriate and told Revelle this. Smith also discussed the matter with then Mayor Tony Knowles, who agreed with his analysis. When Marston herself approached Mayor Knowles, the Mayor told her that the LAB had only an advisory role and that her view of Revelle's performance did not correspond to others' evaluations of Revelle.

In November 1987, the LAB held a meeting at Marston's home. The LAB gave neither the public nor Revelle notice of the meeting; thus Revelle was not present. The LAB decided to recommend Revelle's termination to then Mayor-elect Fink. Based on the discussions at this meeting, Marston drafted a letter to the Mayor-elect and had the other LAB members review and sign it. Attached to the letter was the LAB's negative evaluation of Revelle's library management skills.

Upon receiving the evaluation, Mayor-elect Fink contacted Revelle and asked if he had seen the LAB evaluation. Thinking that the Mayor-elect was referring to an earlier 1985 evaluation, Revelle answered that he knew about an evaluation but had not seen it. The Mayor-elect asked Revelle to review the evaluation since it was negative, and said that he would get him a copy. A member of the Mayor-elect's transition team, Bert Hall, subsequently contacted Revelle and offered him a copy of the evaluation. Revelle indicated that such an evaluation was not a proper function of the LAB, and that Hall should examine the evaluations of Revelle's immediate supervisors.

In January 1988, Mayor Fink terminated Revelle's employment as head of the Municipal Library Department. In deciding to discharge Revelle, Mayor Fink relied solely upon the LAB's 1987 evaluation. Revelle contends, and the Municipality does not dispute, that he did not learn of the 1987 evalua-

tion and letter until shortly after his termination.

## III. *PROCEDURAL HISTORY*

In August 1988, Revelle filed suit against the Municipality. In his initial complaint, he alleged that the Municipality had violated the Open Meetings Act, AS 44.62.310(a),[3] and had deprived him of due process. He sought, amongst other relief, a judgment voiding his termination and awarding him back pay and benefits. Revelle subsequently filed a motion for summary judgment.

The superior court decided Revelle's motion for summary judgment, determining that LAB meetings were subject to the Open Meetings Act, and that the November 1987 LAB meeting in Marston's home violated the Act's provisions. The superior court also concluded that invalidation of Mayor Fink's termination decision was "necessary to foster a full and fair reconsideration" of the termination decision. Accordingly, the superior court ordered the reinstatement of Revelle for a "cooling-off period" of 120 days, in order to permit "adequate time for a full and fair reevaluation of Mr. Revelle's job qualifications and past performance. . . ." Mayor Fink was explicitly prohibited from relying on the LAB's 1987 evaluation, or on materials derived from it, during reconsideration. However, Revelle was denied an award of back pay on the grounds that such an award would not serve the public interest.

At the end of the 120 day period, Mayor Fink again terminated Revelle's employment as Head Librarian. He cited a number of reasons unconnected to the LAB's evaluation for reaching this decision. Revelle did not challenge his second termination, and thus it is not an issue in this appeal.

Thereafter, the Municipality moved for summary judgment on the remainder of Revelle's claims. Revelle responded with a mo-

---

**3.** Alaska Statute 44.62.310(a) states in part:

All meetings of a legislative body, of a board of regents, or of an administrative body, board, commission, committee, subcommittee, authority, council, agency, or other organization, including subordinate units of the above groups, of the state or any of its political subdivisions, including but not limited to municipal-

ities, boroughs, school boards, and all other boards, agencies, assemblies, councils, departments, divisions, bureaus, commissions, or organizations, advisory or otherwise, of the state or local government supported in whole or in part by public money or authorized to spend public money, are open to the public except as otherwise provided by this section.

tion to amend his complaint, adding *inter alia* a claim against Marston and the LAB for tortious interference with contract, and a claim against all the defendants—Mayor Fink, the Municipality, Marston, and the LAB—for breach of the implied covenant of good faith and fair dealing, and for infliction of emotional distress. In addition, Revelle filed a cross-motion for summary judgment.

The superior court granted Revelle's motion to amend. The Municipality was subsequently granted summary judgment on Revelle's claims for due process violations and breach of the implied covenant of good faith and fair dealing. The superior court did not address the claim for interference with contract, because it had not yet been briefed.

Thereafter, Revelle moved to set the case for trial,[4] and in May 1992 the superior court scheduled the trial for late September of the same year. In June 1992, pursuant to a stipulation by the parties, trial was rescheduled for late November 1992.

In September 1992, Revelle moved to amend his complaint, dropping the tortious interference with contract claim. The Municipality did not oppose this motion, except with regard to Revelle's contention that the Municipality would suffer no prejudice from the amendment. The Municipality requested an award of costs and attorney's fees as reimbursement for the expense of trial preparation and as a condition for granting the amendment. The superior court granted the motion to amend, but declined to rule upon the costs and attorney's fees issue.

Revelle then moved for final judgment and sought a determination of prevailing party status for the purpose of an award of attorney's fees under Alaska Civil Rule 82. The superior court issued its final judgment in November 1992, holding that each party prevailed on significant issues in the case and ordering each party to bear its own costs and attorney's fees.

This appeal followed. Revelle appeals from the superior court's denial of his claim for back pay and benefits as a remedy for the Municipality's violations of the Open Meetings Act. He also appeals from the grant of summary judgment to the Municipality on his claims for due process violations and breach of the implied covenant of good faith and fair dealing. Finally, he appeals from the superior court's decision that he was not a prevailing party and thus not entitled to an award of costs and attorney's fees. On cross-appeal, the Municipality claims that the superior court should have awarded the Municipality attorney's fees and costs for trial preparation on the tortious interference with contract claim.

## IV. DISCUSSION

### A. The Superior Court's Denial of Back Pay and Benefits

#### 1. Standard of Review for the Superior Court's Application of the ACCFT Test

■ Action taken contrary to the Open Meetings Act is void. AS 44.62.310(f).[5] When a void decision is remanded by a court to the transgressing governmental body for reconsideration, "approximation of the status quo at the time of the original decision is desirable." *Alaska Community Colleges' Fed'n of Teachers, Local No. 2404 v. University of Alaska,* 677 P.2d 886, 890 (Alaska 1984) [hereinafter *ACCFT*]. Nonetheless, mechanistic application of such a rule is not always in the public interest. *See id.* at 891. The void action in this case was the LAB's recommendation that Revelle be fired. The Mayor's firing of Revelle was not itself in conflict with the Open Meetings Act. The Mayor had the authority to fire Revelle for virtually any reason or no reason. Revelle's firing was thus invalidated by the superior court not because the Mayor lacked authority to fire him, but because the Mayor had relied on the LAB's void evaluation in firing him. Therefore what was needed was a remedy

---

4. In December 1990, the Municipality sought summary judgment on the interference with contract claims, as well as on the emotional distress claims made in the amended complaint. In September 1991, the Municipality obtained summary judgment on the emotional distress claims, but not on the tortious interference claim.

5. The Alaska Legislature recently repealed and reenacted this section changing the term "void" to "voidable." Ch. 69, § 7, SLA 1994. However, only the previous version of the Act is relevant to this appeal.

which would purge the void evaluation of the LAB from the decision-making process concerning whether to fire or retain Revelle.

 This court has established a three-step analysis for determining the appropriate remedy for a decision made in violation of the Open Meetings Act. First, the transgressing governmental body must show that a subsequent ratification of the original decision involved a substantial reconsideration of that decision. *See id.* at 891, 893. If full and fair reconsideration did not occur, then it must be determined whether reconsideration is possible without invalidating the earlier flawed decision. *See id.* at 891–92. If reconsideration is not possible without invalidating the decision, then the court must conduct a balancing test to determine whether invalidation is in the public interest. *Id.* at 892. "In deciding the public interest issue, the court should weigh the 'remedial benefits to be gained in light of the goals of the [Open Meetings Act] against the prejudice likely to accrue to the public.'" *Brookwood Area Homeowners Ass'n v. Municipality of Anchorage,* 702 P.2d 1317, 1325 (Alaska 1985) (quoting *ACCFT,* 677 P.2d at 893).

In the present case, the superior court held that the LAB drafted its 1987 evaluation in violation of the Open Meetings Act. The superior court also determined that "invalidation of the decision to terminate Mr. Revelle is necessary to foster a full and fair reconsideration of that decision." These rulings of the superior court are not at issue in this appeal. Rather, at issue in this appeal is whether the superior court properly balanced the remedial aspects of the Open Meetings Act against the prejudice that the public would be likely to suffer in determining whether to award Revelle back pay and benefits.

Implicit in the superior court's findings is a determination that the remedial benefits of Revelle's reinstatement, in terms of ensuring proper compliance with the Open Meetings Act, outweighed the prejudice to the public interest. Neither party challenged this finding in the superior court. Rather, on appeal

Revelle challenges the superior court's apparent assumption that reinstatement should encompass merely a return of Revelle to his position as head librarian for the Municipality and that an award of back pay and benefits was not required. The superior court essentially separated Revelle's termination into two components: the removal of Revelle from his post, and the cessation of any remuneration to Revelle during the period between his original termination and his reinstatement. The superior court applied the *ACCFT* balancing test separately to each component.[6]

The parties disagree on the proper standard of review for the superior court's application of the *ACCFT* test. Revelle argues that the superior court's denial of back pay and benefits raises a question of law, which this court reviews *de novo.* The Municipality argues that this court should review the superior court's application of the *ACCFT* balancing test under the abuse of discretion standard. *ACCFT,* 677 P.2d at 893. We conclude that whether Revelle was entitled to back pay and benefits depends upon the application of the *ACCFT* balancing test and thus review Revelle's claim for back pay and benefits under the abuse of discretion standard. *Id.* at 893.

### 2. *Application of ACCFT Balancing Test*

In rejecting Revelle's claim for back pay and benefits, the superior court interpreted the Open Meetings Act as having been enacted for the public good rather than providing an avenue for obtaining private relief:

In this case, the facts militating against invalidation of Mayor Fink's decision involve the costs to the Municipality of awarding in excess of $86,000 in back pay to Mr. Revelle. This award could have a profound impact on the library's budget, possibly resulting in an inability to open a new branch library in the Northway Mall or to purchase books or provide services in other branches. In the alternative, an up-

---

**6.** Revelle characterizes the superior court's action as applying the same step twice: first in determining whether to invalidate Mayor Fink's

termination, and second in deciding what type of relief to grant.

ward adjustment of the tax rate for the Municipality would result.

. . . .

An award of back pay to Mr. Revelle is not necessary to promote the Mayor's full and fair reconsideration of the decision whether to terminate or retain Mr. Revelle as Municipal Librarian. Furthermore, remedial actions are to be assessed in light of the goals of the Open Meetings Act, in this case goals of allowing public participation and input in the operation of government. These public goals are not addressed by personally compensating Mr. Revelle for his lost wages. Mr. Revelle may pursue these claims within the context of his other causes of action, including his action for wrongful termination.

Revelle argues that because a person may request a public discussion of subjects that might harm his or her reputation or character, *see* AS 44.62.310(c),[7] the Open Meetings Act protects individuals as well as the public.[8]

■ The Open Meetings Act protects and advances the public's right to remain informed. *ACCFT*, 677 P.2d at 891. "It is believed that public exposure deters official misconduct, makes government more responsive to its constituency, allows for greater public provision of information to the decision-maker, creates greater public acceptance of government action, and promotes accurate reporting of governmental processes." *Id.* (citations omitted). Thus, in assessing the remedial benefits to be gained in light of the Act's goals, the superior court

was correct in considering the Act's broad purpose of encouraging "public participation and input in the operation of government."

However, a legitimate but more specific purpose not considered by the superior court is that of maximizing informed and principled decision-making in individual cases. Those who will be affected by a public body's decision have the right to appear and be heard in a public forum. We have previously considered the remedial purposes of the Act from the individual's perspective:

> Ideally the plaintiff is entitled to be placed in the position he would have been in had the violation never occurred. That position is not one where the adverse decision is never made. Instead it is one where the decision, adverse or not, is taken in conformity with the sunshine laws.

*Id.* at n. 10. Moreover, this court has acknowledged that the Open Meetings Act facilitates informed decision-making. For example, we have stated that the Act, "by ensuring that issues are decided publicly, does attempt to ensure that better substantive decisions are made through public scrutiny and adequate information." *Id.* And we have noted that the Act "allows for greater public provision of information to the decision-maker." *Id.* Thus, we conclude that the superior court should have considered the purpose of maximizing informed and principled decision-making in individual cases in fashioning its remedial decision in response to the LAB's violation of the Act.

The superior court also did not, at least explicitly, consider the Act's remedial goal of

---

7. Alaska Statute 44.62.310(c) states in part:
 The following excepted subjects may be discussed in an executive session:
 . . . .
 (2) subjects that tend to prejudice the reputation and character of any person, provided the person may request a public discussion. . . .

8. The Municipality argues in part that Revelle's situation is similar to *University of Alaska v. Geistauts*, 666 P.2d 424 (Alaska 1983), in which we ordered the reinstatement of a professor, to whom a university committee had denied tenure at a meeting held in violation of the Open Meetings Act. In that case, we upheld the superior court's denial of employee benefits and retirement service credits pending reconsideration. *See id.* at 430–31 & n. 12.

Revelle replies that the superior court additionally upheld an award of monetary damages to the professor, and that this award was not at issue in *Geistauts*. The superior court's final judgment in *Geistauts* indicates that as to one of the counts of the professor's action, the parties stipulated to a damage award of $10,000 and costs and attorney's fees of $5,000. The judgment does not state whether this award represented back pay, represented a remedy for Open Meetings Act violations as opposed to another claim, or affected the superior court's analysis on the issue of the other benefits. Given its lack of analysis of the benefits and back pay issue, we conclude that *Geistauts* is not dispositive of this back pay issue.

deterrence. Placing governmental bodies on notice that courts will strongly enforce the Open Meetings Act serves the Act's remedial goal of deterrence. *See Brookwood Area Homeowners Ass'n*, 702 P.2d at 1326; *cf. Puglisi v. School Comm. of Whitman*, 11 Mass.App.Ct. 142, 414 N.E.2d 613, 613–15 & n. 6 (1981) (upholding an award of back pay in favor of school principal discharged in violation of state open meetings act for the period from the date of the illegal meeting to the date of the lower court's judgment on the grounds that the award "fulfill[ed] the legislative purpose of exacting a penalty for violations of the open meeting law").[9]

■ Thus, in assessing the remedial benefits to be gained in light of the Act's goals, the superior court should have considered the goals of maximizing informed and principled decision-making in individual cases and deterring future violations, as well as the goal of encouraging "public participation and input in the operation of government."[10] The superior court should have weighed these benefits against the prejudice likely to

accrue to the public if Revelle is awarded back pay and benefits.[11]

Ideally, the goal of the Open Meetings Act is to place Revelle in the position he would have been in had the violation never occurred. *ACCFT*, 677 P.2d at 891 n. 10. It is relevant to inquire whether there is a nexus between the LAB's violation and Revelle's termination. For instance, if the LAB's meeting had been public and Revelle had been allowed to present his side of the story in a public forum, he might have altered the LAB's negative evaluation and thereby avoided being fired. On remand the superior court could find there is a reasonable probability that Revelle's presence would have resulted in a different recommendation from the LAB, and that there is a nexus between the violation and the termination. In the event such a finding is made, the superior court could then further determine that an award of back pay and benefits is appropriate. If, on the other hand, Revelle would have been dismissed even if the Open Meetings Act had been observed, the superior court could conclude that there is an absence

9. We note a recent decision involving similar issues in which a Texas appellate court upheld an award of back pay and benefits to an employee who was initially terminated in violation of the state's open meetings law. *Ferris v. Texas Bd. of Chiropractic Examiners*, 808 S.W.2d 514 (Tex.App.1991). The employee argued that the Board's termination attempts at unlawfully held meetings were void as a matter of law, and that she was therefore entitled to an injunction voiding the termination, reinstating her to her former position, and awarding her back pay for the same time period. *Id.* at 516. The court rejected the Board's arguments that Ferris' only remedy under the act was the right to attend a properly convened meeting and held that Ferris was entitled to an award of back pay and benefits. *Id.* at 516, 517, 519. The fact that Ferris was employed on an at-will basis did not affect the court's reasoning. *Id.* at 518–19.

10. This in no way changes our prior statement that "open meetings statutes were not primarily intended as vehicles for individuals displeased with governmental action to obtain reversals of substantive decisions." *ACCFT*, 677 P.2d at 891.

11. The case on which the superior court relied to deny Revelle back pay, *Jarussi v. Board of Trustees of School District No. 28*, 204 Mont. 131, 664 P.2d 316 (1983), is inapposite. *Jarussi* does not address whether an employee may obtain a remedy of back pay or benefits when a public employer's termination decision violates an open

meetings statute. The employee in *Jarussi* sought damages for his wrongful termination claim, not for his claim as to the violations of the Open Meetings Act. *See id.* at 318.

Citing *Sanna v. Lindenhurst Board of Education*, 85 A.D.2d 157, 447 N.Y.S.2d 733 (1982), the Municipality argues that the LAB's violation of the Open Meetings Act should not be "a wagon to which Revelle is allowed to hitch his wrongful termination claims." *Sanna* is also not on point. In *Sanna*, a school board violated New York's open meetings statute when terminating a probationary teacher's employment. *Id.* at 734. The court held that reinstatement constituted an improper judgment on the merits, and that reinstatement was not a remedy for procedural defects contemplated under New York's open meetings statute. *See id.* at 735–36. In other words, the *Sanna* court decided whether to void the termination decision itself, not whether a void termination decision called for an award of back pay.

Furthermore, the *Sanna* court recognized the concern that merely "directing the board to make a redetermination of the matter at its next meeting ... would ... be virtually cost free and therefore essentially no deterrence at all against future violations of the open meeting or open vote statutes." *Id.* The New York court in fact imposed a cost on the school board, allowing the dismissed teacher an award of attorney's fees. *Id.*

of a nexus between the LAB's violation and Revelle's termination, and that back pay and benefits are therefore not warranted. Even if the superior court were to reach the latter conclusion, it could still determine that consideration of the remedial goal of deterrence warrants awarding Revelle at least his costs and the full reasonable attorney's fees he incurred as a result of his attempts to remedy the LAB's violation of the Act. Because it does not appear that the superior court in making its discretionary decision concerning the remedy of back pay considered the Open Meetings Act's goals of informed and principled decision-making and the question of the need to deter Open Meetings Act violations, this aspect of the case must be remanded for such consideration.

### B. Revelle's Due Process Claims

 Revelle contends that he had a protected interest in his employment and thus a constitutional right to procedural due process.[12] In particular, Revelle contends that the LAB's negative evaluation damaged his reputation in the community, depriving him of a constitutionally protected liberty interest,[13] and that the Municipality should have allowed him the opportunity to address the LAB's charges at a pre-termination hearing.[14]

In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the United States Supreme Court addressed whether termination of at-will employment affects a constitutionally protected liberty interest. In *Roth*, a university had hired a nontenured professor for a fixed term. *Id.* at 566, 92 S.Ct. at 2703. At the end of the term, the university decided not to rehire him. *Id.* The Court held that the Fourteenth Amendment's Due Process Clause did not give him the right to a hearing, because he did not show that the university had deprived him of a liberty interest protected under the Constitution:

> The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." ...

> Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities.

*Id.* at 573, 92 S.Ct. at 2707 (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91

---

12. Under the United States Constitution, "No state shall ... deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1.

 The Alaska Constitution provides: "No person shall be deprived of life, liberty, or property, without due process of law." Alaska Const. art. I, § 7.

13. Whether Revelle has a liberty interest in his employment for purposes of due process presents an issue of constitutional interpretation. Issues of constitutional interpretation are questions of law, which this court reviews *de novo*. *Carvalho v. Carvalho*, 838 P.2d 259, 261 n. 4 (Alaska 1992).

14. Revelle contends that he also possessed a constitutionally protected *property* interest in his employment, even though he was employed in an at-will position. At-will employment does not create a constitutionally protected property interest.

*See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Breeden v. City of Nome*, 628 P.2d 924, 926 (Alaska 1981); *see also Bishop v. Wood*, 426 U.S. 341, 345–46 & n. 8, 96 S.Ct. 2074, 2077–78 & n. 8, 48 L.Ed.2d 684 (1976).

 Nonetheless, we have held that a provision in an at-will employment contract that required 30 days notice of termination created a property interest in 30 days of employment, which the employer improperly denied without a pre-termination hearing. *Breeden*, 628 P.2d at 926–27. Relying on *Breeden*, Revelle argues that the Open Meetings Act gives an at-will employee a property interest in his or her job, by giving the employee a right to be present at any meeting where his or her reputation is at issue, and a right to request that the meeting be public. *See* AS 44.62.310(c)(2). This contention is without merit. Nothing in the Open Meetings Act indicates a legislative intent to create either an implied contract of employment or an expectation of continued employment for at-will positions.

S.Ct. 507, 510, 27 L.Ed.2d 515 (1971)); *see also Shatting v. Dillingham City School Dist.*, 617 P.2d 9, 12 (Alaska 1980).[15]

The Ninth Circuit has stated that in order to infringe upon an employee's liberty interest, an employer's negative remarks must belittle the employee's "worth and dignity as an individual," so as to have "severe repercussions *outside* of professional life." *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 366 (9th Cir.1976). For example, remarks that impose a stigma of moral turpitude, such as charges of immorality or dishonesty, intrude upon the liberty interest. *See Roth*, 408 U.S. at 573, 92 S.Ct. at 2707; *Raposa v. Meade School Dist. 46–1*, 790 F.2d 1349, 1354 (8th Cir.1986); *Burk v. Unified School Dist. No. 329*, 646 F.Supp. 1557, 1567 (D.Kan.1986). Negative remarks about an employee's job performance primarily affect the employee's professional life alone, and generally are not considered so stigmatizing as to harm reputation or foreclose future employment.[16] *See Raposa*, 790 F.2d at 1354; *Stretten*, 537 F.2d at 366; *Burk*, 646 F.Supp. at 1566–67.

▆ In Revelle's case, the superior court determined that the LAB evaluation was simply a negative job evaluation, which did not infringe upon a liberty interest because it did not impugn Revelle's honesty, integrity, or morality. The superior court was con-

cerned that a contrary finding would put a liberty interest at stake whenever the Municipality based its dismissal of an at-will employee upon a negative job evaluation.[17] We agree. Because the LAB's negative job evaluation did not infringe upon a constitutionally protected liberty interest, Revelle had no right to a pre-termination hearing.

### C. Breach of the Implied Covenant of Good Faith and Fair Dealing

▆ Revelle further contends that the superior court erred in granting the Municipality summary judgment on his claim for breach of the implied covenant of good faith and fair dealing.[18] An implied covenant of good faith and fair dealing exists in all at-will employment contracts. *Luedtke v. Nabors Alaska Drilling, Inc.*, 834 P.2d 1220, 1223 (Alaska 1992) (*Luedtke II* ); *Mitford v. de Lasala*, 666 P.2d 1000, 1006–07 (Alaska 1983).

▆ Although Revelle's amended pleadings refer to all the defendants as parties to his claim for breach of the implied covenant, his arguments before the superior court discussed only Marston and the LAB's bad faith in making the evaluation, and did not discuss whether Mayor Fink or the Municipality violated the covenant by going outside normal procedures for evaluating personnel. Essen-

---

15. The superior court held *Roth* was inapposite to Revelle's case. In part the superior court reasoned that the LAB's evaluation "is essentially a negative job evaluation which does not impugn Revelle's honesty, integrity, or morality," and that,

> [h]ere, the termination, although based on a negative job evaluation, was communicated in a letter to Revelle which did not discuss the reasons and raised no public stigmatic charges to which Revelle had the right to respond in order to clear his name. The public release of the evaluation, *after* the termination of Revelle and over the Municipality's objection, does not create a liberty interest.

16. Revelle relies in part on *Nichols v. Eckert*, 504 P.2d 1359 (Alaska 1973), for his claim that his termination infringed upon a constitutional liberty interest. In *Nichols*, we held that "[t]he stigma which attaches to a discharge for incompetence is sufficiently injurious" to demand the protection of due process. *Id.* at 1364 & n. 9. However, *Nichols* involved school teachers that could only be fired for incompetence under state

law; thus *Nichols* did not involve parties in an at-will employment relationship. *Id.* at 1360–61. This case is, therefore, not helpful to Revelle's claim.

17. Citing *Breeden*, 628 P.2d at 926, the superior court stated:

> If this evaluation were held to be the type of stigmatic charge discussed in *Roth*, then the due process liberty interest would be at stake every time the Municipality terminated an at-will employee based on job performance resulting in a negative employment evaluation. Clearly, this result would conflict with the law regarding discharge of an at-will employee.

18. This court reviews grants of summary judgment to ascertain "whether there are any genuine issues of material fact and, if not, whether the moving party is entitled to judgment" as a matter of law. *Zeilinger v. SOHIO Alaska Petroleum Co.*, 823 P.2d 653, 656 n. 6 (Alaska 1992). This court makes all reasonable inferences of fact in favor of the non-movant. *Id.*

tially, he tried to attribute the LAB's alleged bad faith to the Municipality.

The superior court rejected this contention. Granting summary judgment in the Municipality's favor, the court concluded that Revelle "claim[ed] no independent breach of the implied covenant of good faith and fair dealing by the Municipality or Mayor Fink," and that Marston and the LAB had no contractual relationship with Revelle. The superior court also concluded that Revelle's claim was "based exclusively on the violations of the Open Meetings Act by the LAB."

The superior court stated in full:

Revelle has alleged that the defendants violated the implied covenant of good faith and fair dealing. This claim is based exclusively on the violations of the Open Meetings Act by the LAB. The LAB, however, had no contractual relationship with Revelle; Revelle's contract was with the Municipality of Anchorage and it is Mayor Fink who terminated that contract of employment. The LAB had neither the authority to hire nor fire the municipal librarian, and, in fact, it is unclear that the LAB even had the authority to make a recommendation to Mayor Fink regarding Mr. Revelle's retention in the new administration. Because the LAB and Wilda Marston had no contract with Mr. Revelle, they cannot be found to have violated the implied covenant of good faith and fair dealing. See, e.g., O.K. Lumber v. Providence Washington Ins., 759 P.2d 523 (Alaska 1988).

Since Revelle claims no independent breach of the implied covenant of good faith and fair dealing by the Municipality or Mayor Fink, there is no factual issue raised in this regard and the Municipality's request for summary judgment on this issue is GRANTED.

On appeal, Revelle advances two new arguments. First, Revelle asserts that his case is one in which the Municipality deviated from standard procedures for termination. A failure to follow established procedures for termination may indicate a breach of the implied covenant of good faith and fair

dealing. See ARCO Alaska, Inc. v. Akers, 753 P.2d 1150, 1155 (Alaska 1988). Second, Revelle argues that Mayor Fink's decision was *objectively* unreasonable because it relied on the recommendation of the LAB, a body not authorized to evaluate the Municipal Librarian. An employer may not only breach the covenant of good faith and fair dealing through improper motive or intent but may also commit an objective breach of the covenant, by failing to act "in a manner which a reasonable person would regard as fair." *Luedtke II,* 834 P.2d at 1224.

We decline to address these new theories raised for the first time in this appeal since they were not advanced before the superior court. *Gates v. City of Tenakee Springs,* 822 P.2d 455, 460 (Alaska 1991); *Tolstrup v. Miller,* 726 P.2d 1304, 1307 n. 7 (Alaska 1986). As noted above the superior court disposed of the entire good faith and fair dealing issue on the ground that the only argument Revelle made was that the LAB's Open Meetings Act violation itself constituted a breach of the implied covenant of good faith and fair dealing. We have concluded that the superior court correctly rejected this theory on the grounds that Revelle did not claim any independent breach of the implied covenant of good faith and fair dealing by the Municipality or Mayor Fink, and that neither Marston nor the LAB had a contractual relationship with Revelle.

### D. *Attorney's Fees*

Because we reverse the superior court's application of the *ACCFT* balancing test, we remand Revelle's claim for attorney's fees to the superior court for redetermination in light of this opinion.

Because Revelle amended his complaint to delete claims after the Municipality had incurred significant costs preparing to try them, the Municipality argues on cross-appeal that it suffered prejudice from the amendment. The Municipality contends that consequently it should receive an award of costs and attorney's fees. The superior court made no express findings on the Municipality's claim of prejudice.[19]

19. The superior court stated that it would ad-

dress "[t]he issue of who is the prevailing party

When a party requests the leave of the court to amend a pleading, the court is not required to make findings as to asserted claims of prejudice from the opposing side. *See* Alaska Civil Rule 15.[20] The sole authority on which the Municipality relies, *Adkins v. International Union of Electrical, Radio & Machine Workers*, 769 F.2d 330 (6th Cir. 1985), upheld an order to rectify the prejudice the other side suffered due to unnecessary litigation. *Id.* at 334. *Adkins* does not require a court to make express findings on any issues of prejudice that a party may raise.

Referring to the originally scheduled trial date of September 28, the Municipality also contends that Revelle filed his September 1992 motion to amend his complaint "[j]ust prior to trial." However, soon after setting the original trial date, the superior court postponed the start of trial to late November, pursuant to a stipulation by the parties. Thus, as Revelle correctly notes, he filed his motion to amend his complaint roughly 2½ months before the start of trial. Contrary to the Municipality's contention, Revelle did not amend his complaint on the eve of trial.

Civil Rule 15(a) gives the superior court broad discretion to allow amendment of pleadings. *Betz v. Chena Hot Springs Group*, 742 P.2d 1346, 1348 (Alaska 1987). Given the substantial amount of time remaining before trial, we hold that the superior court did not abuse its discretion either by granting Revelle leave to amend his complaint or by implicitly rejecting the Municipality's claim of prejudice and request for attorney's fees and costs.

## V. CONCLUSION

We conclude that the superior court failed to consider all of the Act's goals in applying the *ACCFT* balancing test to determine whether Revelle should be awarded back pay and benefits. We therefore REVERSE the superior court's denial of back pay and benefits to Revelle. On remand, the appropriate remedy is committed to the sound discretion of the superior court. In assessing the remedial benefits to be gained in light of the Act's goals, the superior court should consider the goals of maximizing informed and principled decision-making in individual cases and deterring future violations, as well as the goal of encouraging "public participation and input in the operation of government." The superior court should weigh these benefits against the prejudice likely to accrue to the public if Revelle is awarded back pay and benefits. Ordinarily, there must be a nexus between the violation and the termination. However, the superior court could conclude that the LAB's conduct was particularly egregious and that the goal of deterring such conduct in the future is paramount. In such a case, the superior court could conclude that, even in the absence of a nexus, Revelle is entitled to at least his costs and full reasonable attorney's fees.

We further hold that the superior court correctly determined that Revelle's initial termination did not infringe upon his constitutional right to due process. In addition, we affirm the superior court's grant of summary judgment in the Municipality's favor on Revelle's claim for breach of the implied covenant of good faith and fair dealing. We also affirm the superior court's order allowing Revelle to amend his complaint a second time, and thus conclude that the Municipality's cross-appeal lacks merit. We remand Revelle's claim for attorney's fees for redetermination in light of our holding regarding the back pay issue.

and attorneys fees" through a separate motion and determination. Whether the superior court intended to address the Municipality's prejudice claims at a future time is unclear. In its arguments before the superior court on Revelle's motion to amend, the Municipality briefly argued that the court should grant the Municipality prevailing party status on the tortious interference claim, and Revelle responded to that contention. The superior court may well have been referring to these arguments.

**20.** Civil Rule 15(a) states in part:

A party may amend his pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.

MOORE, C.J., not participating.