**NORTH SLOPE BOROUGH, Appellant, and Cross–Appellee,**

v.

**Georgette BARRAZA, Appellee, and Cross–Appellant.**

No. S–6433/6434.

Supreme Court of Alaska.

Nov. 24, 1995.

---

Darlene M. Erickson, North Slope Borough, Barrow, for Appellant and Cross–Appellee.

Robert K. Reiman, Law Offices of Robert K. Reiman, Anchorage, for Appellee and Cross–Appellant.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

COMPTON, Justice.

## I. INTRODUCTION

North Slope Borough terminated Georgette Barraza's employment before she received a hearing. Within three weeks from the date of her termination, a hearing was held before a hearing officer. Eventually the hearing officer awarded Barraza back pay through the final day of the termination hearing. However, the hearing officer did not issue any decision until four months after the hearing. He then issued an interim decision, but delayed issuing his findings of fact and conclusions of law, and a partially amended decision, for an additional four months, a total of eight months after the hearing was held.

Barraza appealed to the superior court. The superior court held not only that Barraza should receive back pay through the time the hearing officer issued his interim decision, but that Barraza should also receive attorney's fees. However, the superior court later reduced the attorney's fees award based upon Barraza's "dilatory conduct."

North Slope Borough appeals the superior court's decision, arguing that the superior court should not have extended the time Barraza was eligible for back pay, and that the attorney's fees award should have been reduced even further. Barraza cross-appeals, arguing that the superior court should have extended back pay to the date when the hearing officer issued his final decision, *i.e.,* the date he issued his findings of fact and conclusions of law.

## II. FACTS AND PROCEEDINGS

Georgette Barraza was hired by the North Slope Borough (NSB) in mid–1988. After taking steps to address what it perceived as Barraza's inadequate performance, NSB notified Barraza on January 2, 1990, that she would be terminated effective February 1. Barraza requested and received a hearing regarding the propriety of her termination. The hearing was held from February 15–17. Following the hearing, Barraza requested that the hearing officer receive and consider briefing on Barraza's eligibility for rehire.

The hearing officer issued an interim decision on June 21, explaining that:

> Although it has been the intent of the hearing officer to delay issuing a decision until formal findings of fact and conclusions of law have been prepared, the parties are entitled to a timely decision. Accordingly, the hearing officer's decision is presented [now]. Formal findings of fact and conclusions of law shall be prepared and forwarded to the parties at a later date.

The last sentence of this statement apparently was prompted by a NSB ordinance requiring that:

> In all cases, the board or hearing officer shall report the findings, conclusions and decision to all parties in writing.

North Slope Borough Code of Ordinances (NSBC) § 2.20.180(E) (1986). The hearing officer decided that:

> 1. [NSB] had just cause to terminate [Barraza];
>
> 2. Discrimination on the basis of race or national origin was not a factor in [Barraza's] termination;
>
> 3. [Barraza] was entitled to an adversarial hearing prior to her termination and accordingly is entitled to receive payment of wages through and including February 17, 1990;
>
> 4. The hearing officer has jurisdiction to determine the issue of eligibility for rehire; and
>
> 5. [NSB] had a sufficient basis to deny [Barraza] rehire eligibility.

At Barraza's request the hearing officer issued a clarification of the decision's effective date. He stated that he

appreciate[d] the fact that it is difficult for either party to appeal the decision without knowing the findings of fact and conclusions that led to the decision. Accordingly, it is the decision of the hearing officer that the effective date of the decision ... is that date upon which the findings of fact and conclusions of law are issued.

On October 8 the hearing officer issued findings of fact and conclusions of law and an amended [1] decision.

Barraza appealed to the superior court, Alaska R.App.P. 602(a)(2), challenging the hearing officer's determination that back pay was not due through the date the findings of fact and conclusions of law were issued. NSB cross-appealed on several grounds.

The superior court affirmed the hearing officer's conclusion that Barraza's due process rights were violated by NSB's failure to offer her a pre-termination adversarial hearing. As recompense for this violation, the superior court awarded Barraza back pay through the date of the hearing officer's interim decision, i.e., June 21, 1990. However, the court did not state the amount of this back pay. The court also held that Barraza was required to mitigate damages. Therefore, the court retained jurisdiction to adjudicate this issue "if the parties cannot reach agreement as to the appropriate amount of mitigation to be credited against the back pay award."

Seven months later, after the parties were unable to agree on "the appropriate amount of mitigation," but were able to stipulate to certain facts, the superior court held a hearing. It concluded essentially that Barraza was due full pay and benefits for the period

until the hearing officer's interim decision was issued, less mitigation. This holding came in spite of the fact that during the last six months of Barraza's employment, she was absent from work for a substantial amount of time due to elective surgery. Instead of focusing on this last six month period as representative of Barraza's loss, the hearing officer focused instead on the year immediately preceding this period, during which Barraza had completed a work schedule with NSB that was free from significant absences.

Barraza then requested attorney's fees and costs. After initially awarding Barraza $9,000 in attorney's fees, the superior court reconsidered the award at NSB's request and reduced the award by $1,000. The superior court claimed it made the reduction pursuant to Appellate Rule 510(b), citing Barraza's dilatory conduct as the reason for a fifteen month delay in the superior court proceedings.

NSB appeals, claiming that the superior court erred in (1) enlarging the back-pay award, (2) failing to consider Barraza's attendance record in calculating back pay, and (3) awarding $8,000 in attorney's fees.[2] Barraza cross-appeals, claiming that the superior court should have extended the back pay until October 8, 1990, the date the hearing officer issued his findings of fact and conclusions of law.

### III. DISCUSSION

#### A. The Back–Pay Award

■ The hearing officer awarded Barraza back pay from the date of her termination

---

1. The amendment was due to Barraza's post-hearing briefing on the eligibility for rehire issue.

2. NSB does not appeal the superior court's conclusion that Barraza's due process rights were violated by NSB's failure to offer her a pre-termination hearing. In reaching this conclusion, the superior court relied on *Storrs v. Municipality of Anchorage*, 721 P.2d 1146 (Alaska 1986). In *Storrs*, we held that a public employee is ordinarily entitled to an "adversarial hearing" prior to termination, but that "a full judicial hearing is not required." *Id.* at 1150. NSB's personnel rules entitle an employee five days

notice of dismissal, the right to be represented by counsel, and the right to "answer orally or in writing and to furnish affidavits and other documentary evidence in support of the answer." Because NSB has not appealed the superior court's due process decision, we do not reach the issue of whether the rights afforded employees under NSB's personnel rules satisfy the "adversarial hearing" requirement. Nor do we decide if Barraza's post-termination hearing cured any due process defect. *See id.* (In limited circumstances, "a post-termination adversarial hearing may satisfy the requirements of Alaska's Due Process Clause.").

to the date of the post-termination hearing.[3] The superior court extended the back pay award to the date the hearing officer issued his interim decision.[4] NSB argues that the superior court erred in extending the award beyond the date of the hearing. Barraza, in her cross-appeal, argues that the award should have been extended to October 8, the date the hearing officer issued findings of fact and conclusions of law.

■ We have held that when a constitutionally unlawful dismissal is cured by a post-termination hearing, the appropriate relief is back pay up to the time of the curative hearing. *See Storrs v. Municipality of Anchorage*, 721 P.2d 1146, 1151 (Alaska 1986); *Kenai Peninsula Borough Bd. of Educ. v. Brown*, 691 P.2d 1034, 1039 (Alaska 1984). In cases where this rule has been applied, a decision regarding the propriety of the employee's termination was made at the time of the post-termination hearing. *See, e.g., Brown*, 691 P.2d at 1036. In the present case, however, the hearing officer did not issue a decision until four months after the hearing. In an effort to harmonize our precedent with the facts of this case, the superior court concluded that "[u]ntil there is some announcement of what the decision is, the hearing is not over and back pay must continue." We agree with this reasoning.

■ Until the hearing officer issued a decision, Barraza could not know whether she would be reinstated, or whether she should look for alternative employment. Thus, the damages flowing from the deprivation of her due process right to a pre-termination adversarial hearing did not cease until the decision was issued. After the decision was issued, Barraza could be fairly certain that she had lost, and that she should look for alternative employment. Although formal findings and conclusions were to be prepared and forwarded to the parties at a later date, the hearing officer left little doubt as to the finality of his decision. He wrote in the June 21, 1990 decision: "Any party may appeal this decision to the superior court in accordance with North Slope Borough ordinances, state statutes, and court rules." Although Barraza was entitled to a detailed statement of findings and reasons supporting the decision, the delay of four months between the decision and the issuance of the findings was not so unreasonable as to create an independent due process violation. The superior court properly awarded back pay to the date of the interim decision.[5]

### B. Computation of Back Pay

■ NSB contends that the superior court erred in estimating the number of hours Barraza would have worked between her dismissal and the hearing. This determi-

---

**3.** We review the hearing officer's decision exercising our independent judgment. *See Handley v. State, Dept. of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992) ("The 'substitution of judgment' test is used for questions of law where no agency expertise is involved.").

**4.** We review the superior court's decision *de novo. See Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987) ("[W]hen the superior court acts as an intermediate court of appeal, no deference is given to [its] decision.").

**5.** NSB asserts that the superior court's award of back pay to Barraza for the period from the end of her hearing to the date of the hearing officer's issuance of his final decision constitutes a "windfall" and unjust enrichment. In making this argument, NSB relies on federal cases that indicate a plaintiff may not recover compensatory, versus nominal, damages for a denial of due process unless the deprivation was unjustified. *See, e.g., Brewer v. Chauvin*, 938 F.2d 860, 862–

63 (8th Cir.1991) (citing *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)). According to these cases, if it can be demonstrated that the plaintiff would have been fired if a proper hearing had been held, then there is no basis to claim lost compensation; this would amount to a windfall, since the violation is the denial of procedural due process and not the loss of public employment. *Id.* at 862, 864. However, these cases interpret the federal constitution's due process clause and largely would deny any back pay in the interim between the dismissal and the curative hearing.

In this context, we have provided greater due process protection under Alaska's constitution than is available under the federal constitution, and have not embraced the federal courts' view that such an award constitutes a windfall. *See Storrs v. Municipality of Anchorage*, 721 P.2d 1146, 1148–51 (Alaska 1986) (engaging in separate analysis of the federal and Alaska constitutions), *cert. denied*, 479 U.S. 1032, 107 S.Ct. 878, 93 L.Ed.2d 832 (1987).

nation is a factual one. This court will set aside the superior court's findings of fact only if they are clearly erroneous and "leave[ ] this court with 'a definite and firm conviction on the entire record that a mistake has been made.'" *Klosterman v. Hickel Inv. Co.,* 821 P.2d 118, 121–22 (Alaska 1991) (quoting *Parker v. Northern Mixing Co.,* 756 P.2d 881, 891 n. 23 (Alaska 1988)).

■ During the final six months of her employment, Barraza took a substantial amount of leave due to elective surgery and the corresponding recovery.[6] However, during her first year of employment with NSB she worked an average of 72.6 out of 75 available hours per pay period. NSB argues that the superior court should have used Barraza's average time per pay period for the final six months of her employment to calculate the back pay. Instead, the superior court credited Barraza as though she would have worked full-time.

NSB fails to cite persuasive authority in arguing that the final six months of Barraza's employment provide an appropriate measure for the back wage calculation. NSB offers no support for the arbitrary six month period it claims should be utilized. Instead, NSB provides reference to authority that states the general proposition that damages should seek to compensate the claimant for what was lost. *See, e.g.,* Restatement (Second) of Contracts § 344 (1971).

The superior court's holding indicates that it did consider Barraza's frequent absences during her final six months of employment. Nevertheless, the superior court concluded that Barraza was entitled to back pay as though she worked a normal schedule (*i.e.,* one without significant absences) during the relevant period. In computing Barraza's back wages, the superior court apparently concluded that the extensive absences during Barraza's last six months of employment were not indicative of her attendance record.

The superior court's determination is reasonable. NSB offers no evidence that Barraza's extensive absences during the last six

months of her employment would have continued into the following months. The inordinate absences were due to surgery and recovery. In fact, Barraza's leave hours dropped significantly in the final month of her employment, indicating that her weakened condition was greatly improving. Therefore, the superior court's finding regarding the hours Barraza would have worked was not clearly erroneous. *See Klosterman,* 821 P.2d at 121–22.

### C. *The Award of Attorney's Fees*

#### 1. *The initial award of attorney's fees*

■ Appellate Rule 508 governs awarding attorney's fees in superior court, on an appeal from an administrative decision. *Rosen v. State Bd. of Pub. Accountancy,* 689 P.2d 478, 480 n. 3 (Alaska 1984). The award of these fees is committed to the discretion of the superior court and will not be overturned absent an abuse of discretion. *Id.* at 482–83. The superior court need not explain its basis for awarding fees; it must only explain denials. *Id.* at 480.

■ NSB asserts that the superior court abused its discretion in awarding Barraza $8,000 in attorney's fees. Its chief complaints regard the structuring of Barraza's agreement for fees with her attorney, which provided that her attorney was to be paid for one-third of the amount recovered less costs, and that the amount recovered included attorney's fees. NSB's focus on the structure of Barraza's agreement with her attorney is misplaced. The superior court stated:

> Such arrangements are irrelevant to the attorney's fee award. The fee award is based on the value of the services rendered. . . .

Therefore, there appears to be no link between the fee arrangement and the amount awarded by the superior court.

NSB further alleges that the superior court's use of the phrase "measure of success" implicates the provisions of Civil Rule 82, since it is only under Rule 82 that we have endorsed this factor in awarding attor-

---

**6.** Barraza worked only 48 hours total during 6 weeks from late October through November 1989.

ney's fees. Therefore, NSB argues that the limitations of Civil Rule 82 apply. NSB provides no authority for the proposition. More importantly, the superior court's use of this factor in awarding the fees does not on its face constitute an abuse of discretion.

For these reasons, NSB's contentions regarding the initial award of attorney's fees should be rejected.

### 2. The reduction of attorney's fees

Both parties take issue with the superior court's reduction of attorney's fees. NSB asserts that the reduction should have been greater than $1,000. Barraza argues that no reduction should have been made.

■■■ Barraza argues that since the superior court based the reduction of attorney's fees upon delay, and that since a reduction in prejudgment interest cannot be based upon delay,[7] neither can a reduction in attorney's fees.

Barraza did not raise this issue in her statement of points on cross-appeal, nor did she amend her statement of points on cross-appeal. Alaska R.App.P. 204(a)(5)[a]. Further, NSB did not respond to this argument in its responsive brief. Therefore, Barraza has waived this issue. *Oceanview Homeowners Ass'n, Inc. v. Quadrant Constr. and Eng'g*, 680 P.2d 793, 797 (Alaska 1984) (in general, issues omitted from appellant's statement of points on appeal will not be considered by this court).[8]

## IV. CONCLUSION

The superior court's determination that back pay should extend to the date the hearing officer issued his interim decision is AFFIRMED. The superior court's award of attorney's fees is AFFIRMED.

MATTHEWS, Justice, concurring.

I agree with the majority opinion. I write separately to more fully explain the context in which this case is presented and to express more fully my reasons for awarding back pay up to, but not beyond, the point at which the hearing officer announced his decision.

### I.

Just cause existed for Barraza's termination. She was found to have wilfully refused to carry out certain reasonable requests by her employer and she was found to be incapable of doing some of the things that were required of her. She is therefore entitled to no damages for being fired. However, as this case is presented, both parties agree that there was a procedural due process violation associated with her firing and that she is entitled to some damages because of this violation.

For purposes of this appeal the borough does not take issue with the superior court's finding that Barraza's right to a fully adverse pre-termination hearing was violated. Borough Ordinance 11.05.2 does provide for a

---

7. NSB has argued that Barraza should forfeit the amount of prejudgment interest on damages, since the superior court found that Barraza's counsel was responsible for a fifteen month delay in completing the litigation. However, NSB fails to cite any precedent from this jurisdiction endorsing its proposition. As Barraza notes, in *Farnsworth v. Steiner*, 638 P.2d 181 (Alaska 1981), this court addressed the denial of prejudgment interest, stating:

> [E]ven a lengthy delay attributable to the plaintiff is not an occasion for such denial. Since an award of interest is not a penalty but compensation [for the time that a judgment creditor has been less than whole], fault for the delay between the injuring event and payment of consequential damages is irrelevant.

*Id.* at 184 (citing *Beech Aircraft Corp. v. Harvey*, 558 P.2d 879, 887–88 (Alaska 1976)). NSB's argument is contrary to established precedent.

It provides no rationale why this court should reverse its prior determination on the issue.

8. As authority for reducing the award of attorney's fees, the superior court cited Appellate Rule 510(b), which states:

> For any infraction of these rules, the appellate court may withhold or assess costs or attorney's fees as the circumstances of the case and discouragement of like conduct in the future may require; and such costs and attorney's fees may be imposed on offending attorneys or parties.

Alaska R.App.P. 510(b). However, the court merely referred to Barraza's "dilatory conduct" as the basis for the reduction. The court should have specified particular conduct which might have supported a finding that an infraction of the rules had occurred.

pre-termination hearing.[1] The hearing offered is not the same as a court trial as there is no opportunity to confront adverse witnesses and cross-examine them.

Does Alaska law require a court trial-like proceeding *before* a government employee can be fired? Our most complete case in this area is *Storrs v. Municipality of Anchorage*, 721 P.2d 1146 (Alaska 1986), where we stated that ordinarily a public employee has a right to an "adversarial hearing" before dismissal.[2] *Id.* at 1150. However, what we said before mentioning the right to an adversarial hearing may tend to suggest that the contemplated hearing need not be as complete as a full trial. The full paragraph reads as follows:

> In *Nichols v. Eckert*, 504 P.2d 1359, 1365 (Alaska 1973), the court ruled that a post-termination hearing was constitutionally deficient because the discharged employee was not permitted to call witnesses on her behalf. Although a full judicial hearing is not required, the employee must be allowed to present a defense by testimonial and other evidence. *Id.* Three justices concurred in an opinion concluding that, absent extraordinary circumstances, the hearing should occur prior to termination. *Id.* at 1366. We therefore conclude that a public employee ordinarily has the right to an adversarial hearing before he may be effectively dismissed.

*Storrs,* 721 P.2d at 1150. Our summary in *Storrs* of the issue in *Nichols* is accurate. The deprivation complained of in that case was the right of the dismissed teachers to call witnesses on their behalf. We stated: "[W]e conclude that appellants must be given the opportunity to present their own defense by testimony and other evidence.... A full

judicial hearing is not necessary...." *Nichols,* 504 P.2d at 1365.

In the present case, the personnel rules gave Barraza, in a pre-termination hearing context, the opportunity to present witnesses by affidavit as well as notice of the reasons for the proposed action, the right to answer orally or in writing, and the right to be represented by an attorney. Arguably, this was enough to satisfy the rudiments of the adversarial hearing requirement under *Nichols* and *Storrs*. Given the posture of this case as it is presented to us, we need not and do not decide this question.

## II.

We now know that Barraza would have been terminated even if her due process rights had been observed punctiliously. Thus here, as in *Revelle v. Marston,* 898 P.2d 917 (Alaska 1995), the absence of a nexus between the assumed violation and her termination can justify the conclusion that back pay is not warranted. *Revelle* at 928. Interests separate from her interest in continued employment with the borough should be looked at in an effort to determine whether back pay is warranted. From an employee's standpoint the relevant interests involved are these:

(1) The employee needs an *accurate* decision.

(2) The employee needs *notice* of the decision. This tells her either that she should go back to work or look for new work.

(3) The employee needs a *prompt* decision. Promptness often is needed if the rem-

---

1. Borough Ordinance 11.05.2 provides:
   Borough Service employees who hold permanent status against whom dismissal, demotion or suspension for more than 30 days as proposed is [sic] entitled to:
   *11.05.2(1)* Five days written notice stating the specific reasons for the proposed action;
   *11.05.2(2)* An opportunity to answer orally or in writing and to furnish affidavits and other documentary evidence in support of the answer;
   *11.05.2(3)* Be represented by an attorney;
   *11.05.2(4)* A written decision and specific reasons therefore at the earliest practicable date.

2. This statement is dictum, as the holding of *Storrs* was that the collective bargaining agreement validly substituted a *post*-termination hearing for pre-termination proceedings that would otherwise have been required. That post-termination hearing was to take place before the superior court (since the union declined to pursue Storrs' termination grievance) but Storrs waived his right to a "prompt post-termination hearing" before the court by not requesting one and refusing a trial type hearing when one was eventually offered. *Id.* at 1150.

edy of reinstatement is to be realistic, and it avoids the hardship associated with being unemployed and not knowing whether one should seek another permanent job.

In this case Barraza was notified that she had lost on June 21, 1990. The hearing officer's decision of that date was in writing and was announced because, as the hearing officer stated, "the parties are entitled to a timely decision." Although formal findings and conclusions were to be prepared and forwarded to the parties at a later date, the hearing officer left little doubt as to the finality of his decision. He wrote in the June 21, 1990 decision: "Any party may appeal this decision to the superior court in accordance with North Slope Borough ordinances, state statutes, and court rules."

How are the interests identified above advanced by running back pay to the time of the hearing, to the time of the announced decision, or to the time of entry of final findings of fact and conclusions of law? The employee's interest in accuracy is not particularly time sensitive. That interest is furthered by having a hearing and by requiring findings of fact and conclusions of law but it would be difficult to make a case that the decision is more accurate if made later, or if made earlier.

The other two interests, notice and promptness, are time sensitive. It is better for the employee economically, in terms of the availability of remedies, and probably emotionally, to receive a prompt decision. The employee may be damaged by delay to the extent that she has not sought alternative sources of employment while waiting for the post-termination hearing decision. This damage can be seen as independent of lost wages from the job from which she has been terminated and to which she may have no continuing right if, as in this case, the substantive grounds on which her termination is based are legally justified. Further, as a secondary goal, an award of damages up to the time of the decision may tend to encourage a prompt decision. Often however, as in this case and as in *Storrs* and *Casey v. City of Fairbanks,* 670 P.2d 1133 (Alaska 1983),

the promptness of the decision will be beyond the control of the employer.

Until Barraza knew the reasons for the hearing officer's decision and received findings of fact and conclusions of law she could not appeal. Of what importance is the right of appeal to the back pay issue? The exercise of an appeal advances the employee's interest in accuracy. However, if this interest is to receive recognition, back pay should run until the appeal is decided either at the first or second tier of the court system. An employee might argue that until the case is finally decided on appeal she would be justified in not seeking another job because of the possibility of ultimately obtaining court ordered reinstatement. The reasonableness of such a decision would, in general, be doubtful given the lengthy delays unfortunately but typically involved in the appellate process.

To run back pay in favor of an employee who was fired for just cause until judicial appellate processes are completed would impose an excessive financial burden on public employers. Every dismissed employee would receive, in effect, a couple of years of severance pay. This financial burden, in turn, would inhibit the discharge of employees who should be discharged, and hinder the efficiency of government operations.

Based on the foregoing, my conclusion is that it was appropriate under the circumstances of this case to extend the damage award to the time of the decision of June 21, 1990. That was the point at which Barraza had reasonably definite knowledge that she had lost her challenge and knew, or should have known, that the time had come for her to seek alternative employment. Running the award for a longer period is not justified as the government's interests in fiscal integrity and an efficient public service outweigh the potential benefits to the employee.